PEOPLE v WATERMAN

Docket No. 65579. Submitted June 7, 1983, at Lansing.—Decided September 17, 1984.

Defendant, Dennis R. Waterman, was convicted on his plea of guilty in the Shiawassee Circuit Court of first-degree criminal sexual conduct, assault with intent to commit great bodily harm less than murder and possession of a firearm during the commission of a felony. The trial court, Peter J. Marutiak, J., sentenced defendant pursuant to a sentence bargain to concurrent terms of life imprisonment for the criminal sexual conduct conviction and from six years and eight months to ten years for the assault conviction, and a consecutive term of two years for the felony-firearm conviction. The defendant's sentence bargain was based on the premise that the so-called "lifer law" would apply to his life sentence, making him eligible for parole consideration after serving ten years. Defendant appeals alleging that the sentence bargain was illusory as a result of a 1979 Attorney General opinion which determined that the passage of 1978 Initiative Proposal B, in effect, repealed the "lifer law" by eliminating parole consideration for prisoners with non-mandatory life sentences. The Attorney General was allowed to file an amicus curiae brief on appeal. *Held:*

1. The express purpose of 1978 Initiative Proposal B was to amend § 33 of 1953 PA 232 (MCL 791.233; MSA 28.2303) only and was not intended to repeal § 34 of 1953 PA 232 (MCL 791.234; MSA 28.2304), the "lifer law". The amendatory language of 1978 Initiative Proposal B thus resulted only in the repeal of the allowances for good time, special good time and special parole as set forth in subsection (b) of § 33.

2. The Attorney General incorrectly concluded that the minimum term of ten calendar years established by § 34 was the

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 395, 415.

[2] 60 Am Jur 2d, Penal and Correctional Institutions § 58 *et seq.*

[3] 20 Am Jur 2d, Courts § 64 *et seq.*

[4] 2 Am Jur 2d, Administrative Law §§ 518, 519.

   7 Am Jur 2d, Attorney General § 11.

   20 Am Jur 2d, Courts §§ 70-75.

"special parole" repealed by Proposal B. The minimum term of ten calendar years which is imposed by the court pursuant to § 34, the "lifer law", in effect, sets the minimum term on all life sentences other than first-degree murder and major controlled substance offenses at ten calendar years.

3. The "special parole" which 1978 Initiative Proposal B eliminated is clearly defined in § 33, subsection (b). Thus, in addition to good time and special good time, Proposal B eliminated the statutory authority of the sentencing judge or the judge's successor to activate "special parole" before completion of the ten calendar year minimum sentence established in § 34.

4. Defendant is eligible for consideration for parole after serving ten calendar years of his sentence. Thus, his sentence bargain was not illusory.

5. The opinions of the Attorney General are binding on state agencies, such as the Department of Corrections, for limited purposes only until the courts make a pronouncement on the issue. The sentence rendered by the trial court is a judicial pronouncement that may only be overturned by court action.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION — REPEAL OF STATUTES.

The question of whether a statute is repealed by a subsequent statute relating to the same subject matter involves a determination of the legislative intent which is entitled to the utmost respect when clearly expressed; the presumption is against a repeal by implication; the statutes must be construed together and reconciled, with each being given force and effect if possible; if there is such repugnance that both cannot operate, then the last expression of the legislative will must control.

2. CRIMINAL LAW — INITIATIVE PROPOSAL B — SENTENCING — SPECIAL PAROLE — LIFER LAW.

The express purpose of 1978 Initiative Proposal B was to amend MCL 791.233 to eliminate the allowance for good time, special good time and special parole set forth in a subsection of that statute; the "special parole" eliminated by Proposal B is not the ten calendar year minimum sentence provision set forth in the "lifer law", MCL 791.234, which minimum sentence provision was not repealed by implication with the passage of Proposal B (MCL 791.233, 791.234; MSA 28.2303, 28.2304).

3. CONSTITUTIONAL LAW — COURTS — JUDICIAL POWER.

The judicial power of the State of Michigan is vested exclusively in the courts (Const 1963, art 6, § 1).

4. ADMINISTRATIVE LAW — ATTORNEY GENERAL OPINIONS — COURTS.
The opinions of the Attorney General are binding on state agencies for limited purposes only until the courts make a pronouncement on the issue.

*David E. McClernan,* Prosecuting Attorney, for the people.

*James R. Clatterbaugh,* for defendant on appeal.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael A. Nickerson,* Assistant Attorney General.

Before: DANHOF, C.J., and ALLEN and K. N. HANSEN,* JJ.

K. N. HANSEN, J. Defendant pled guilty to first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), assault with intent to commit great bodily harm less than murder, MCL 750.84; MSA 28.279, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), pursuant to a sentence bargain.[1] The defendant was sentenced to concurrent terms of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The circuit court stated on the record as follows:

*"The Court:* Now I have had a part in this and I am going to set my part out very clearly and the reason for it. You are facing possible life or possible term of years on some of these charges. I have indicated to your attorney that I would utilize my discretion in sentence by giving you a flat life sentence, and that's the only part that I have played in this, no promises other than that, plus the two years, whatever that means. And my reason for that, young man, is this: that when I sentence you, you are 26 years old, I would make no statement upon the records as to whether you should die in prison or not, nor would I make any that you should ever get out. I just want to make sure that when you come up for parole, which you will, that me, if I am alive, or my successor if I am dead, takes a look at you all over as an individual and then has perfect freedom at that time to agree that you should be parolled [sic] or in wisdom or lack of wisdom to say no, he belongs right where he is, outside the society of free men."

life imprisonment for the criminal sexual conduct conviction and from six years and eight months to ten years for the assault conviction, and a consecutive term of two years imprisonment for the felony-firearm conviction. The defendant's sentence bargain was based upon the premise that MCL 791.234; MSA 28.2304, the so-called "lifer law", would apply to his life sentence, making him eligible for parole consideration after serving ten years. He appeals as of right.

Defendant's contention on appeal centers around OAG, 1979-1980, No 5583, p 438 (October 16, 1979) in which the Attorney General determined that the 1978 Initiative Proposal B, in effect, repealed the "lifer law" by eliminating parole consideration for prisoners with non-mandatory life sentences. The defendant contends that OAG 5583 precludes his parole consideration under the "lifer law", making his sentence bargain illusory. The people argue that OAG 5583 is incorrect, *i.e.,* Proposal B did not amend or repeal the "lifer law". The people further argue that the Attorney General's opinion regarding the effects of Proposal B on the "lifer law" is not binding on this or any court. The Attorney General has been allowed to file an amicus curiae brief on appeal.

The issue on appeal is whether the 1978 Initiative Proposal B expressly or impliedly repealed MCL 791.234; MSA 28.2304, the "lifer law".

In determining whether the legislative enactment of the 1978 Initiative Proposal B repealed the "lifer law", we are guided by the following principles of statutory construction. First, the question of whether a statute is repealed by a subsequent statute relating to the same subject matter involves a determination of the legislative intent. When the legislative intent is clearly ex-

pressed, it is entitled to the utmost respect. Second, the presumption is against a repeal by implication, the theory being that had the Legislature intended a repeal it would have expressly so stated by designating the specific acts or parts of acts repealed. Third, the earlier and later statutes involved in any case must be construed together and reconciled, with each being given force and effect if possible. Finally, if there is such repugnance that both statutes cannot operate, then the last expression of the legislative will must control. See *Jackson v Michigan Corrections Comm,* 313 Mich 352; 21 NW2d 159 (1946); *Detroit Edison Co v Dep't of Revenue,* 320 Mich 506; 31 NW2d 809 (1948).

The 1978 Initiative Petition Proposal B provided in part as follows:

"Proposal B

"Proposed Initiation of Legislation

"(Amendment of existing law, proposed by initiative petition, to prohibit the granting of a parole to a prisoner convicted of certain crimes involving violence or injury to person or property until at least after the minimum sentence has been served.)

"The following is the language of the proposed law as it appears on the Petition to Initiate Legislation.

"(Words with a line drawn through them are claimed to be in the existing law and will not appear in the proposed law. Words appearing in capital letters are new language.)

"*An initiative petition to amend section 33 of Act No. 232 of the Public Acts of 1953,* entitled 'An act to revise, consolidate and codify the laws relating to probationers and probation officers and herein defined, to pardons, reprieves, commutations and paroles, to the administration of penal institutions, correctional farms and probation recovery camps, to prison labor and

prison industries, and the supervision and inspection of local jails and houses of correction; to create a state department of corrections, and to prescribe its powers and duties; to provide for the transfer to and vesting in said department of powers and duties vested by law in certain other state boards, commissions and officers, and to abolish certain boards, commissions and offices the powers and duties of which are hereby transferred; to prescribe penalties for the violation of the provisions of this act; and to repeal all acts and parts of acts inconsistent with the provisions of this act,' being section 791.233 of the Compiled Laws of 1970; and to add section 33b.

"THE PEOPLE OF THE STATE OF MICHIGAN ENACT:

"Section 1. *Section 33 of Act No. 232 of the Public Acts of 1953, being section 791.233 of the Compiled Laws of 1970, is amended and section 33b is added to read as follows:*

"Sec. 33 (1) The grant of ~~any~~ A parole shall be subject to ALL OF the following ~~provisions:~~

"(a) ~~That no~~ A prisoner shall NOT be given his liberty on parole until the board has reasonable assurance after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that ~~he~~ THE PRISONER will not become a menace to society or to the public safety.;

"(b) ~~That no~~ A parol shall NOT be ~~so~~ granted to ~~any~~ A prisoner until ~~he~~ THE PRISONER has served the minimum term imposed by the court less ~~such~~ allowances for good time or special good time ~~as he~~ TO WHICH THE PRISONER may be entitled to by statute,: ~~Provided, That~~ EXCEPT THAT prisoners shall be eligible for parole prior to the expiration of their minimum terms of imprisonment whenever the sentencing judge or ~~his~~ THE JUDGE'S successor in office ~~shall give his~~ GIVES written approval of the parole of ~~such~~ THE prisoner prior to the expiration of ~~such~~ THE minimum terms of imprisonment.;

"(c) *NOTWITHSTANDING THE PROVISIONS OF SUBSECTION (b),* A PAROLE SHALL NOT BE GRANTED TO A PRISONER SENTENCED FOR THE

COMMISSION OF A CRIME DESCRIBED IN SECTION 33b UNTIL THE PRISONER HAS SERVED THE MINIMUM TERM IMPOSED BY THE COURT, WHICH *MINIMUM TERM SHALL NOT BE DIMINISHED BY ALLOWANCES FOR GOOD TIME, SPECIAL GOOD TIME, OR SPECIAL PAROLE."* (Emphasis added.)

It is clear that the use of the wording in the initiative, "An initiative petition to amend section 33 of Act No. 232 of the Public Acts of 1953" indicates that the express purpose of Initiative Proposal B was to amend § 33. Furthermore, the wording "Section 1. Section 33 of Act No. 232 of the Public Acts of 1953, being section 791.233 of the Compiled Laws of 1970, is amended" also indicates that the express purpose was to amend § 33. In addition, prior to the passage of Proposal B, § 33 was amended by the Legislature to provide in part:

"(b) A parole shall not be granted to a prisoner until the prisoner has served the minimum term imposed by the court less allowances for good time or special good time to which the prisoner may be entitled to by statute, except that prisoners shall be eligible for parole prior to the expiration of their minimum terms of imprisonment whenever the sentencing judge or the judge's successor in office gives written approval of the parole of the prisoner prior to the expiration of the minimum terms of imprisonment."

After the passage of Proposal B, a new subsection (c) was added to § 33. Subsection (c) provided as follows:

"(c) *Notwithstanding the provisions of subsection (b),* a parole shall not be granted to a prisoner sentenced for the commission of a crime described in section 33b until the prisoner has served the minimum term imposed by the court, which minimum term shall not be

diminished by allowances for good time, special good time, or special parole." (Emphasis added.)

The use of the wording "Notwithstanding the provisions of subsection (b)", of the new subsection (c) of § 33 is a further indication that the amended language expressly amended only § 33. Finally, there was no mention whatsoever in Initiative Proposal B of § 34 of 1953 PA 232, the "lifer law". We, therefore, conclude that the express purpose of Initiative Proposal B was to amend § 33 only and was not intended to repeal § 34, the "lifer law". The amendatory language of Initiative Proposal B thus resulted only in the repeal of the allowances for good time, special good time and special parole as set forth in subsection (b) of § 33.

However, the Attorney General in OAG, No 5583 found that the "special parole" set forth in subsection (b) of § 33, which was repealed by Initiative Proposal B, was in fact the ten calendar year parole consideration provision of § 34. He, therefore, concluded that Initiative Proposal B repealed any consideration for parole for prisoners serving non-mandatory life sentences. The minimum term set by the court would thus be, in effect, life imprisonment. Such a result would, of necessity, raise a non-mandatory life sentence to the same status as that of a mandatory life sentence without parole for first-degree murder pursuant to MCL 750.316; MSA 28.548, or a nonparolable life sentence for a major controlled substance offense.

The "lifer law" provided in part in 1978:

"A convict who is imprisoned in a prison or reformatory of this state under sentence for life * * * other than prisoners sentenced for life for murder in the first degree and prisoners sentenced for life or for a minimum term of imprisonment for a major controlled

substance offense, who has served 10 calendar years of the sentence, shall be subject to the authority and jurisdiction of the parole board and may be released on parole in the discretion of the parole board, subject to the conditions set forth in this subsection. A parole shall not be granted a convict so sentenced and so imprisoned until after a public hearing held in the manner prescribed for pardons and commutations in sections 44(c) to (e) and 45. Notice of the public hearing shall be given to the sentencing judge, or his successor in office, and parole shall not be granted if the sentencing judge, or his successor in office, files written objections to the granting of the parole, which written objections shall be made part of the hearing."

A review of §§ 34 and 33 both prior to and subsequent to the passage of 1978 Initiative Proposal B reveals that the Attorney General incorrectly concluded that § 34 was the "special parole" repealed by Proposal B. The language of subsection (c) of § 33, "a parole shall not be granted to a prisoner * * * until the prisoner has served the minimum term imposed by the court", is identical to the language set forth in the original subsection (b) of § 33. The use of identical language indicates that Proposal B did not repeal "the minimum term imposed by the court" provision of § 33. Therefore, the minimum term of ten calendar years which is imposed by the court pursuant to § 34, the "lifer law", also cannot be repealed by implication. Thus, the "lifer law", in effect, sets the minimum term on all life sentences other than first-degree murder and major controlled substance offenses at ten calendar years.

Furthermore, the "special parole" which 1978 initiative Proposal B eliminated is clearly defined in § 33, subsection (b) only, without reference to anything set forth in § 34. The "special parole" defined in § 33, subsection (b) allowed the sentenc-

ing judge or the judge's successor in office to activate the parole process by simply giving written approval of the parole to the Department of Corrections. Prior to 1978 Initiative Proposal B, the trial judge could activate this "special parole" to reduce the ten calendar years minimum sentence on non-mandatory life sentences pursuant to § 34. Thus, in addition to good time and special good time, it was this "special parole", *i.e.,* the statutory authority of the sentencing judge or the judge's successor to activate parole prior to the completion of the minimum term, which was eliminated by Proposal B. The ten calendar year minimum sentence provision of § 34 was not the "special parole" eliminated by Proposal B.

We, therefore, conclude that the Attorney General's Opinion No 5583 was in error in determining that the "special parole" eliminated by 1978 Initiative Proposal B in § 33 was, in fact, the minimum term of ten years established by § 34. Initiative Proposal B did not repeal the ten calendar year minimum sentence set forth by the "lifer law" on non-mandatory life sentences, but did eliminate the allowances for good time, special good time and special parole expressly repealed under § 33.[2] In the instant case, the defendant received a non-mandatory life sentence for first-degree criminal sexual conduct pursuant to the "lifer law" and is, therefore, eligible for consideration for parole after serving ten calendar years of his sentence. Thus, his sentence bargain was not illusory; he received exactly that for which he bargained.

---

[2] We further note that our disposition of this issue conflicts with dicta in *People v Cohens,* 111 Mich App 788, 795-796; 314 NW2d 756 (1981), which stated that Proposal B precludes parole for non-mandatory life sentences. Accordingly, we expressly disavow this dicta and hold that Proposal B, as argued by the prosecutor, left the "lifer law" intact.

A secondary issue in this case arises from the defendant's position which suggests that the opinions of the Attorney General are binding on the Department of Corrections without regard to the holdings of any court.[3] The defendant's position creates the absurd result that the opinion of the Attorney General is definitive, final and unreviewable. The judicial power in this state is vested exclusively in the courts. Const 1963, art 6, § 1. The opinions of the Attorney General are binding on state agencies for limited purposes only until the courts make a pronouncement on the issue. See *Traverse City School Dist v Attorney General,* 384 Mich 390; 185 NW2d 9 (1971). The sentence rendered by a trial court is a judicial pronouncement that may only be overturned by court action.

Affirmed.

---

[3] Dicta to that effect, based on *People v Penn,* 102 Mich App 731, 733; 302 NW2d 298 (1981), appears in *People v Anderson,* 112 Mich App 640, 653; 317 NW2d 205 (1981), and *People v Cohens, supra.* This dicta misinterprets the *Penn* decision; see 102 Mich App 733, fn 2.