WILLIAMS v CITY OF ROCHESTER HILLS

Docket No. 210744. Submitted June 7, 2000, at Detroit. Decided December 12, 2000, at 9:05 A.M.

Marvin Williams brought an action in the Oakland Circuit Court against the city of Rochester Hills, seeking a declaration that he, as a military veteran holding a license issued pursuant to § 1 of the peddler's license act, MCL 35.441; MSA 4.1241, was exempt from applying and paying for an additional permit or license from the defendant and was exempt from prosecution by the defendant for selling his goods without securing a local permit or license. The court, Robert C. Anderson, J., granted summary disposition for the defendant, holding that a person holding a license pursuant to § 1 of the peddler's license act still had to comply with the defendant's municipal regulations, including the requirement in the defendant's zoning ordinance of seeking a permit from the defendant. The plaintiff appealed.

The Court of Appeals *held*:

Although a person holding a license issued pursuant to the peddler's license act must comply with all other municipal regulations, a municipal corporation may not require a person holding a peddler's license issued pursuant to the state statute to apply for, secure, or pay for a local license or permit. Accordingly, although the trial court properly held that the plaintiff was subject to the conditions set forth in the defendant's zoning ordinance, it erred in holding that the plaintiff must apply and pay for a permit issued by the defendant.

Affirmed in part and reversed in part.

MUNICIPAL CORPORATIONS — PEDDLERS — MILITARY VETERANS — PEDDLER'S LICENSE ACT.

A municipal corporation may not require a military veteran who holds a license issued pursuant to the peddler's license act to apply for, secure, or pay for a similar license or permit issued by the municipality in order to hawk or peddle the veteran's own goods for the veteran's direct personal benefit or gain (MCL 35.441; MSA 4.1241).

*John D. Lazar*, for the plaintiff.

*Beier Howlett* (by *Paul L. Nystrom* and *John D. Staran*), for the defendant.

Before: HOEKSTRA, P.J., and CAVANAGH and WHITE, JJ.

PER CURIAM. Plaintiff sought a declaratory judgment that, as a holder of a license to sell goods issued pursuant to § 1 of the peddler's license act, MCL 35.441; MSA 4.1241, he is exempt from applying and paying for an additional permit or license from defendant municipality and is exempt from prosecution by defendant for failure to do so. The circuit court granted defendant summary disposition. Plaintiff appeals as of right. We affirm in part and reverse in part.

I

Plaintiff is a veteran who owns and resides on property within defendant city and for years has operated a seasonal roadside stand on his property. Plaintiff holds a license issued pursuant to the peddler's license act, MCL 35.441 *et seq.*; MSA 4.1241 *et seq.*, under which he, as a veteran,[1] has the right to sell his own goods within the state of Michigan if the proceeds from the sale of goods are to be used for his direct personal benefit or gain. Plaintiff filed his complaint for declaratory judgment on August 1, 1997, alleging that he had sold various goods from his prop-

---

[1] The act provides that to qualify for a peddler's license, one must be either an honorably discharged member of the armed forces who served at least 180 days of active duty or have a service-connected disability. The record is not clear whether plaintiff meets the criteria of the former, the latter, or both categories, but defendant does not dispute that plaintiff is properly licensed under the peddler's license act, MCL 351.441 *et seq.*; MSA 4.1241 *et seq.*

erty within defendant city and had relied on his veteran's peddler's license as authority to do so without additional licensing from defendant. Plaintiff alleged that subsection 200-21.07b of the Rochester Hills Zoning Ordinance (hereinafter subsection 21.07b) required all persons to obtain licenses before selling goods within defendant's boundaries, that defendant had cited him on several occasions for selling goods without first obtaining a license, and that several actions were pending against him in the district court as a result. Plaintiff alleged that defendant refused to acknowledge that MCL 35.441; MSA 4.1241 exempts plaintiff from local regulations.

Defendant's answer included attached copies of various citations defendant had issued plaintiff in 1996,[2] primarily for operating a roadside stand on his property without a permit, and further stated that one violation pertained to plaintiff's selling particular goods not permitted to be sold even with a city permit.

---

[2] Plaintiff was cited for violating subsection 21.07b, including: a September 20, 1996, citation stating that plaintiff "did allow a roadside stand or market without obtaining a permit from the building department. I.e., seasonal produce roadside stand." The citation stated, "Seasonal roadside stands and markets for the sale of produce (and flowers when sold with produce), and Christmas trees may be permitted temporarily by obtaining a permit from the building dept."

Defendant cited plaintiff three times on December 5, 1996. The first was for operating a roadside stand or market without a permit, specifically, selling Christmas trees; the second was for the sale of Christmas wreaths, grave blankets, and bows and crosses, which the citation stated were not permitted to be sold; the third citation, issued in the afternoon, was for selling Christmas trees without a permit.

Plaintiff was cited for violating a different provision of the ordinance, subsection 21.10e, on December 4, 1996, for erecting a temporary sign advertising Christmas trees for sale despite not having a permit to sell them. That ordinance section is not before us.

Defendant filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10) on January 8, 1998, arguing that plaintiff's roadside market was in a residential zoning district and that plaintiff "had sold Christmas trees, wreaths, grave blankets, bows, crosses, a large volume of various produce, and other items, a large portion of which have been purchased from other markets in the State of Michigan." Defendant argued that subsection 21.07b "is a municipal police zoning regulation enacted for the purpose of preventing the establishment of permanent commercial operations in non-commercial districts," and requires that a permit be obtained before selling such items in a residential district.[3]

Plaintiff's brief in response to defendant's motion argued that the disputed issues were whether MCL 35.441; MSA 4.1241 exempted him from having to obtain a license from the local municipality to sell his goods. Plaintiff argued that he did not dispute the

---

[3] Defendant noted that the misdemeanor charges against plaintiff for violating the ordinance had been tried in the district court, that plaintiff had been found guilty in each case, and that the various district court judges had stayed sentencing pending resolution of this declaratory judgment action. Defendant argued that plaintiff had failed to state a claim because he may not maintain an action for declaratory relief when criminal proceedings are pending against him. Finally, defendant argued that no genuine issue of fact remained because defendant's ordinance is a regulatory municipal police power ordinance with which holders of veterans' peddler's licenses must comply, and because no actual controversy existed inasmuch as MCL 35.441; MSA 4.1241 applies only to veterans selling their own goods, whereas plaintiff was purchasing his goods from other markets and not growing them himself. Defendant attached to its motion copies of its zoning ordinance, two opinions of the Attorney General, discussed later in this opinion, and an Oakland Press newspaper article regarding plaintiff's roadside stand.

validity of subsection 21.07b, but, rather, was challenging the application of the ordinance to him.[4]

The circuit court's opinion and order granting defendant summary disposition stated:

> Plaintiff, a veteran, filed this declaratory judgment action alleging an actual controversy regarding whether The Peddler's License Act, MCL 35.441; MSA 4.1241, et seq., exempts him from prosecution under Rochester Hills zoning ordinance section 21.07(b). The Court finds that the statute does not exempt Plaintiff from prosecution under the ordinance.
>
> First, the statute clearly does not exempt veterans from complying with municipal police regulations. As stated by the Attorney General in OAG, 1947-1948, No 391, p 321 at 328: ". . . [V]eterans holding licenses under the state act must comply with municipal police regulations . . . . "
>
> Further, the Court notes that the ordinance is a regulatory zoning ordinance. Its purpose is expressly stated: "It is the intent of the City not to allow the establishment of permanent commercial operations in noncommercial districts."
>
> Therefore, the Court finds that Plaintiff, even holding a state license, must comply with the City's municipal regulation. The ordinance requires that he obtain a permit. To hold otherwise would allow any veteran to open any commercial business in any zoning district.
>
> Defendant's motion for summary disposition is granted pursuant to MCR 2.116(C)(8) and (10).

A

At the time defendant issued plaintiff citations in 1996 for violating ordinance § 21.07, that ordinance provided in pertinent part:

---

[4] Plaintiff attached an affidavit stating that he sold only his own goods and argued that the newspaper article defendant relied on was inadmissible hearsay.

Uses Not Otherwise Included within a Specific Use District.

Because the uses referred to possess unique characteristics, making it impractical to include them in a specific use district classification, they may be permitted by the City Council, unless otherwise specified after review and recommendation by the Planning Commission . . . and after public hearing pursuant to Section 23.17, Special and Conditional Land Uses, unless otherwise specified.

These uses require special consideration since they service an area larger than the City, contain unusual features, or require sizable land areas, creating problems of control with reference to abutting use districts. Uses falling within this section are as follows:

*          *          *

b. *Roadside stands and markets and Christmas tree sales. It is the intent of the City not to allow the establishment of permanent commercial operations in noncommercial districts. However, seasonal roadside stands and markets for the sale of produce (and flowers when sold with produce), and Christmas tree sales may be permitted on a temporary basis by obtaining a permit* from the Building Department. The permit shall be subject to the following conditions:

*          *          *

3. Except as otherwise provided in Section 21.07, paragraph b, 1(b), or except for roadside produce stands or markets located in B-1, B-2, B-3 or CI districts, all produce sold at a roadside stand or market shall be grown on the immediate property or on property in the City of Rochester Hills which is owned or leased by the applicant for the permit for the roadside stand or market. Proof of ownership or lease of the property where all produce to be sold under the permit shall be or was grown shall be provided at the time of application for the permit. Christmas trees sold in the City may be grown outside of the City. Whenever a permit is issued for a B-1, B-2, B-3 or CI District and produce sold is not grown within the City, the permit holder shall

register as a business pursuant to Chapter 3-01 of the Code of Ordinances. [Emphasis added.]

Violation of § 21.07 was a misdemeanor.

*Subsequent changes to § 21.07.* After defendant cited plaintiff for violations in 1996 and before plaintiff filed his complaint for declaratory judgment, defendant repealed the criminal/misdemeanor penalty provision of subsection 21.07b, making violation thereof a civil infraction.[5] During oral argument before this Court, both parties noted that during the pendency of this appeal, defendant's city council amended § 21.07 in two ways pertinent to the instant case: (1) the requirement that all produce sold at roadside stands be grown on property owned or leased by the applicant within defendant city was repealed,[6] and (2) the ordinance now permits the sale of wreaths, boughs, grave blankets, and garland with Christmas tree sales.[7]

---

[5] Ordinance No. 410 took effect on April 1, 1997, and established a schedule of civil fines, payable for admissions of responsibility by persons served with municipal infraction violations of chapter 200, of $70, and $150 for a "first repeat offense."

[6] Thus, the question whether plaintiff sells produce not grown on his own property will no longer arise. See n 7, *infra.*

[7] Ordinance No. 200-116 was adopted by defendant's city council on April 19, 2000, by resolution stating:

Resolved, an Ordinance to Amend Section 21.07, uses not otherwise included within a specific use district, of the Zoning Ordinance of the City of Rochester Hills, Oakland County, Michigan, to apply in one-family residential detached condominium developments the same restrictions on roadside stands and markets and Christmas tree sales that apply in residential subdivisions, *to clarify what products may be sold in connection with Christmas tree sales, to repeal the requirement that all produce sold at roadside stands or markets not located within a residential subdivision or condominium shall be grown on the immediate property or other property in the City owned or leased by the permit applicant,* to repeal conflicting Ordinances, *to prescribe a civil fine for viola-*

Subsection 21.07b as amended now reads:

> b. Roadside stands and markets, and Christmas tree sales. It is the intent of the City not to allow the establishment of permanent commercial operations in noncommercial districts. However, seasonal roadside stands and markets for the sale of produce (and flowers when sold with produce), and Christmas tree sales (including wreaths, boughs, grave blankets and garland) may be permitted on a temporary basis by obtaining a permit from the Building Department. The permit shall be subject to the following conditions . . . .

B

Plaintiff conceded during oral argument before this Court that, other than the requirement that he apply and obtain a permit, the restrictions set forth in defendant's zoning ordinance, subsection 21.07b, are properly applied to him.[8]

During oral argument before this Court, defendant acknowledged that the peddler's license act, MCL 35.441 *et seq.;* MSA 4.1241 *et seq.,* as interpreted by the Attorney General, precludes defendant from requiring plaintiff to pay a fee for a local permit to sell from his roadside stand. Defendant stated during oral argument that it will therefore not require plaintiff to pay such a fee. Defendant further noted that because it has already inspected and verified that

_____

*tions* is hereby adopted for Second Reading and shall become effective on Friday, April 28, 2000, the day following its publication in the *Clarion-Eccentric* on Thursday, April 27, 2000. [Emphasis added.]

[8] "The zoning of land is a reasonable exercise of government police power." *Paragon Properties Co v Novi,* 452 Mich 568, 573; 550 NW2d 772 (1996).

plaintiff's roadside stand meets the requirements of § 21.07, it will not require plaintiff to apply for a permit. However, defendant still maintains that it has the right to require that plaintiff apply for and obtain a permit, albeit without paying for it.

II

We review the circuit court's grant of summary disposition de novo.[9] *Singerman v Municipal Service Bureau, Inc*, 455 Mich 135, 139; 565 NW2d 383 (1997). Although the circuit court's opinion and order states that it granted summary disposition pursuant to both MCR 2.116(C)(8) and (C)(10), it is clear that the court looked beyond the pleadings, and we therefore review under the latter standard. A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. The circuit court must consider affidavits, pleadings, and documentary evidence filed or submitted by the parties in the light most favorable to the nonmovant. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). The moving party has the initial burden of supporting its position by affidavits or other documentary evidence; the burden then shifts to the nonmovant to establish that a genuine issue of disputed fact exists. *Id.* at 455. The motion is properly granted if the nonmovant fails to present documentary evidence so establishing. *Id.*

---

[9] We do not address plaintiff's argument that the circuit court failed to afford him an opportunity to amend his pleading because no such request was made below, plaintiff's appellate brief did not set forth the substance of any such amendment, and the issue was not raised during oral argument.

A

# As enacted in 1921, the peddler's license act, 1921 PA 359, approved May 18, 1921, provided:

AN ACT to provide for issuance of veterans' licenses with out cost to former soldiers, sailors or marines of the military or naval service of the United States, to hawk, vend and peddle their own goods, wares and merchandise within this state.

*The People of the State of Michigan enact:*

Sec. 1. Every honorably discharged soldier, sailor or marine of the military or naval service of the United States, who is a resident of this state, and a veteran of the War of the Rebellion, or of the Spanish-American War, or of the World War, or of any other war in which the United States of America has been a participant, *shall have the right to hawk, vend and peddle his own goods, wares and merchandise within this state, by procuring a license for that purpose* to be issued as herein provided, which shall be valid for a period of one year.

Sec. 2. On the presentation to the clerk of any county, in which any former soldier, sailor or marine may reside, of a certificate of honorable discharge from the army or navy of the United States, which discharge shall show that the person presenting it is a veteran of the War of the Rebellion, or of the Spanish-American War, or of the World War, or of any other war in which the United States of America has been a participant, such county clerk *shall issue without cost* to such former soldier, sailor or marine a veteran's license certifying him to be entitled to the benefits of this act The county clerk shall provide himself with proper blank forms and books and shall keep a record of all licenses issued under the provisions of this act. A veteran's license issued without cost under the provisions of this act, shall be personal to the licensee and any assignment or transfer thereof shall be absolutely void.

Sec. 3. Nothing in this act shall be construed as contravening the provisions of act number one hundred ninety-one of the Public Acts of nineteen hundred one or act num-

ber two hundred ninety-four of the Public Acts of nineteen hundred thirteen, as amended, known as the "itinerant vendors" and "transient merchants" acts. [Emphasis added.]

The act was amended in 1947, 1947 PA 11, to include veterans of the coast guard and World War II.

1989 PA 20, effective May 17, 1989, amended the act to provide:

Sec. 1. Every honorably discharged member of the armed forces of the United States who served at least 180 days of active duty service in the armed forces or has a service connected disability as a result of that service and is a resident of this state *has the right to sell his or her own goods within this state if the proceeds from the sale of the goods are to be used for the direct personal benefit or gain of that former member, by procuring a license for that purpose* issued as provided in this act, which shall be valid for a period of 1 year.

Sec. 2. (1) Upon the presentation to the clerk of any county, in which any former member of the armed forces resides, . . . the *county clerk shall issue without cost* to the former member a veteran's license certifying him or her to be entitled to the benefits of this act. The county clerk shall provide proper forms and books and shall keep a record of all licenses issued under this act. A license issued under this act is personal to the licensee. An assignment or transfer of the license is void.

(2) The licensee while engaged in selling goods under this act shall conspicuously display a sign at the place of sale that contains the following information in not less than 18-point boldfaced type:

(a) The name of the licensee.

(b) The license number.

(c) A statement in substantially the following form:

"The profit from the sale of this product is for my personal benefit".

(3) At the time of sale of goods under this act, a written statement of not less than 12-point boldfaced type shall be

printed on or attached to the goods in substantially the following form:

"The profit from the sale of this product is for my personal benefit".

(4) A person shall not knowingly make a false representation that the proceeds from goods sold under this act benefit a veterans' organization. . . .

\*     \*     \*

(5) A person who violates subsection (2), (3), or (4) is responsible for a civil infraction and may be ordered to pay a civil fine of not more than $1,000.00.

(6) The prosecutor for the county in which a person violated this act shall bring a civil action in any court of competent jurisdiction to enforce this act.

Sec. 3. Nothing in this act shall be construed as contravening the provisions of Act No. 51 of the Public Acts of 1925, being sections 445.371 to 445.378 of the Michigan Compiled Laws. [Emphasis added.]

In 1996 several provisions of the act not at issue here[10] were amended in minor fashion, and subsection 6 was deleted. 1996 PA 187.

### III

The question before us is whether defendant may require plaintiff, a veteran holding a peddler's license pursuant to state statute, to apply for and obtain a local permit to sell goods.

### A

"When construing a statute, we begin by recognizing that '[w]here the legislative intent is clearly expressed, it is entitled to the utmost respect.' "

---

[10] See MCL 35.442(2), (4)(b), (5); MSA 4.1242(2), (4)(b), (5).

*Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998), quoting *People v Waterman*, 137 Mich App 429, 432-433; 358 NW2d 602 (1984).

> "The cardinal rule of all statutory construction is to identify and give effect to the intent of the Legislature. The first step in discerning intent is to examine the language of the statute in question. We read the language according to its ordinary and generally accepted meaning. Judicial construction is authorized only where it lends itself to more than one interpretation." [*Chandler, supra* at 398, quoting *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 611; 566 NW2d 571 (1997).]

The parties agree that no Michigan appellate court has construed the peddler's license act, but that several Attorney General opinions have. We address them chronologically.

In OAG, 1932-1934, p 227, 228 (March 18, 1933), the Attorney General considered whether the peddler's license statute abrogated the statutory authority of villages to "license and regulate hawkers and peddlers," among other things:

> Section 3 of [the veteran's peddler's license act] provides that nothing in this act shall be construed as contravening the provisions of certain acts known as the "itinerant vendors" and "transient merchants." Section 2 of Act 85 of the Public Acts of 1923 being section 9705 of the Compiled Laws of 1929 provides:
>
> "Itinerant or traveling vendors or hawkers under the meaning of this act shall include all persons who carry on the business described in section one (1) hereof, by passing from house to house or haranguing the people on the public streets or in public places or by using any art or device for attracting crowds and therewith recommending their wares and offering them for sale or who travel from place to place

and hire, lease or occupy any room, building or structure for the exhibition and sale of their wares."

It is evident that *the legislature intended to grant a license gratuitously to honorably discharged veterans to hawk and peddle within the state as long as they peddle their own goods* and commit no acts which will bring them within the meaning of the statutes governing itinerant vendors or transient merchants, *without any further licensing by local authorities.* [Emphasis added.]

In OAG, 1947-1948, No 391, p 327, 327-329 (May 26, 1947), the Attorney General addressed whether a local unit of government may " 'prohibit by ordinance a veteran holding a hawkers' and peddlers' license under the provisions of Act 359 of 1921, as amended, from hawking and peddling within the corporate limits or boundaries of said local unit without also securing a local license so to do' ":

Act No. 359, Public Acts of 1921, as last amended by Act No. 11, Public Acts of 1947 (§ 4.1241 et seq., Mich. Stat. Ann. Cum. Supp.) provides for the issuance to veterans of free licenses "to hawk, vend and peddle their own goods, wares and merchandise within this state." Section 1 of the act provides that an eligible veteran "shall *have the right* to hawk, vend and peddle his own goods, wares and merchandise *within the state, by procuring a license for that purpose . . . .*"

Section 2 of the act provides for the issuance of such licenses by the several county clerks and the nature of the license is in substance a certification that the licensee is "*entitled to the benefits of this act.*"

By Chapter 21 of the Revised Statutes of 1846, Section 19.41 et seq., Michigan Statutes Annotated [sic, MSA 19.541 *et seq.*; see 1948 CL 446.16 *et seq.*; repealed 1952 PA 141], hawking and peddling generally is prohibited without a state license. . . .

Under the last mentioned provisions the holder of a state license is not exempted from municipal licensing. *City of Alma v Clow*, 146 Mich 443 [109 NW 853 (1906)].

Thus, if the act authorizing the issuance of free licenses to veterans was intended simply to confer upon them an exemption from the fee provisions of the general act requiring state licenses of hawkers and peddlers, such license would not preclude municipalities from requiring additional licenses.

If this, however, had been the legislative intention, it would likely have been accomplished by amendment to the existing act rather than by independent legislation. In this connection it must be noted that the license issued to a veteran under Act No. 359, Public Acts of 1929 [sic, 1921] as amended, certifies that the holder is "entitled to the benefits *of this act*" (the independent act) and that this act (the independent act) confers upon him "the right to hawk, vend and peddle . . . *within this state.*" The phrase "within this state" must be given its common and ordinary meaning and thus has reference to the geographical limits of the state so that one peddling within the confines of a particular municipality would be peddling "within the state" and the legislature has said affirmatively that he shall have this right.

The authority of municipalities to regulate hawking and peddling is predicated upon police power delegated to them. Generally speaking, municipalities do not enjoy "inherent" police power and there can be no doubt concerning the authority of the legislature to withdraw a previously delegated power. It is noted, however, that the provisions of the general act prohibiting hawking and peddling without a state license contains [sic] no regulatory provisions. The issuance upon proper application is mandatory and it is evident that the statute is primarily a revenue measure. On the other hand, the licenses required by municipalities are required not for the purposes of revenue but for the purposes of regulation and the revenue received is raised incidentally for the purposes of regulation and the amount of license fee imposed must have a necessary and reasonable relation to the regulatory features.

Consequently, it is our opinion that the legislature intended to provide in substance that veterans should have the right to hawk, vend and peddle within this state including hawking and peddling within municipalities *without payment of a fee therefor, but that it was not intended that the regulatory provisions of municipal ordinances should be made inapplicable to such veterans.* The net result of this is that although veterans holding licenses under the state act *must comply with municipal police regulations, they may not be compelled to pay a fee* for the privilege of exercising the right to hawk and peddle which has been given by the state. [Emphasis added.]

We therefore agree with the opinion of former Attorney General Merlin Wiley, found in the Biennial Report of the Attorney General for 1923-24, on page 41,[11] the concluding paragraph of which (page 43) reads:

---

[11]  OAG, 1923-24, p 41, 41-43, responded to a request for

a construction of Act 359 of the Public Acts of 1921 relative to the issuance of veterans' licenses to former soldiers . . . and in particular whether said act supersedes or modifies the statutory authority given to cities and villages to require licenses to hawk, vend and peddle in such cities and villages.

The Attorney General stated:

It was evidently the intention of the legislature *to provide for a gratuitous license* to all honorably discharged soldiers . . . who were residents of the State of Michigan . . . which would permit such veteran to hawk, vend and peddle his own goods, wares and merchandise *anywhere within this state without requiring said veteran to procure further license therefor in each or any municipality wherein he desired to so hawk, vend and peddle;* provided however, that he conducted said business in a manner that would not bring him within the terms of an "itinerant vendor" as defined in Act 191 of the public [sic] Acts of 1901 . . . or a "transient merchant" as defined by Act 294 of the Public Acts of 1913, as amended . . . .

It follows, therefore, that a license regularly issued to a veteran under the terms and conditions of said Act No. 359 . . . entitles him to hawk, vend and peddle his own goods . . . anywhere within the state of Michigan, including cities and villages within this state, *without further license authority from such cities and villages;* provided, however, that the licensee does not conduct said business in a manner to bring himself within the definition of an "itiner-

"It follows, therefore, that a license regularly issued to a veteran under the terms and conditions of said Act No. 359 of the Public Acts of 1921 entitles him to hawk, vend and peddle his own goods, wares and merchandise anywhere within the state of Michigan, including cities and villages within this state, *without further license authority from such cities and villages*; provided, however, that the licensee does not conduct said business in a manner to bring himself within the definition of an 'itinerant vendor' or 'transient merchant' as defined by the statutes above referred to; *subject, however, to the reasonable police regulations of such cities and villages* regulating and prescribing certain streets or public places therein where all hawking, vending or peddling is to be limited or suppressed." [Emphasis added.]

In II OAG, 1958, No 3187, p 209, 210-211 (July 24, 1958), the Attorney General addressed " 'whether a veteran may obtain a peddler's license under Act No. 359 . . . and be legally engaged in the nursery business as defined by Act No. 189 of the Public Acts of 1931 without having obtained a nursery license under that act.' " The Attorney General stated:

Act 359 P.A. 1921 as amended, providing for the Veterans' Peddlers' License has been construed by this office at various times. *This act dispenses with the necessity of securing a local license* to hawk, vend and peddle goods, wares and merchandise belonging to a veteran within the confines of this state.

\*     \*     \*

---

ant vendor" or "transient merchant" as defined by the statutes above referred to; *subject, however, to the reasonable police regulations* of such cities and villages regulating and prescribing certain streets or public places therein where all hawking, vending or peddling is to be limited or suppressed. [Emphasis added.]

The legislative intent as expressed in the Veterans' Act was *to provide for an exemption in favor of one who hawks and peddles his own goods.* Nowhere in this act are there any words which indicate that a veteran is exempted by this act from the requirements of obtaining a special state license and by the way of illustration we direct attention to O.A.G. 1933, page 292, dated July 20, which stated that veterans were not exempt from the requirements of a license to carry on the business of dealing at wholesale in farm products to be used for human food as required at that time by Act 202 P.A. 1933.

In the instance under consideration, a buyer or dealer engaged in buying or selling nursery stock must secure a license. This is required under Act 189 P.A. 1931 as amended, enacted to prevent the introduction and dissemination of insect pests and plant disease and providing for their repression and control. This act was passed under the police power for the purpose of control of pests and diseases. It is not a revenue measure and the fees that are required must be used for the purpose of paying enforcement costs. Section 9 of this act is the licensing section, and it provides in part as follows:

". . . All fees collected under this act shall be paid into the general fund of the state and shall be used in enforcement of this act: Provided, That the provisions of this section shall not apply to persons engaged in fruit growing who are not nurserymen but desire to sell or exchange surplus small fruit plants of their own growing: Provided, further, That the provisions of this section shall not apply to farmers or other persons who may sell or give away native shade trees, native shrubs, native vines, native hardy perennials, or native evergreens from their own premises."

By opinion rendered on July 5, 1923, it was held that the veterans' exemption applied in favor of persons who sold drugs, nostrums, face powders and that Act 85, P.A. 1923, requiring vendors or hawkers of such commodities to be licensed did not apply. In that opinion we stated that the subsequent statute, Act 85 supra, did not repeal or abrogate the earlier statute, Act 359 supra, providing for a hawkers and peddlers exemption in favor of veterans. Insofar as this

former expression conflicts with the language herein found, it is overruled.

It is our opinion that *the basic purpose of the Veterans' Act*, No. 359 P.A. 1921 as amended, *was to eliminate the necessity of a veteran complying with the license provisions of local licensing ordinances relating to hawkers, vendors and peddlers selling small wares.* It is an act of limited application and does not dispense with the need of a state license for special purposes. Therefore a veteran who proposes to sell nursery stock must first obtain the license as provided for under Act 189 P.A. 1931 as amended. [Emphasis added.]

Attorney General opinions are not binding, *Frey v Dep't of Management & Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987), but can be persuasive authority. *Indenbaum v Michigan Bd of Medicine (After Remand)*, 213 Mich App 263, 274; 539 NW2d 574 (1995).

As interpreted by the Attorney General, the peddler's license act gives plaintiff the right to sell his own goods within the state, including within defendant city's boundaries, without requiring plaintiff to apply for, secure, or pay for a local permit in order to sell his goods; however, plaintiff must otherwise comply with § 21.07 of defendant's zoning ordinance.

The Attorney General's construction of the statute, with which we agree, is supported by *Tagmire v Atlantic City*, 35 NJ Super 11, 22; 113 A2d 59 (1955), in which the court held that although municipalities had the power to *regulate* peddling, under the statute authorizing honorably discharged veterans to peddle wares within the state, NJ Stat Ann 45:24-9, *the municipalities did not have the right to require licensed veterans to obtain a municipal license* before they could peddle:

Viewing N.J.S.A. 45:24-9 *et seq.*, as a whole and giving full effect to all its parts, it is clear that the statute expressly and comprehensively sets out the licensing procedure to be followed in the case of honorably discharged veterans who desire to hawk, peddle and vend. They acquire their license at the hands of the county clerk, and from no other official or authority. It cannot be said that a municipality may, under color of the power to regulate given by the 1950 and 1952 amendments,[12] require veterans to take out a second (municipal) license. To so interpret the existing law would give municipalities the power to defeat a statutory policy of long standing—that duly licensed veterans may hawk, peddle and vend anywhere within the boundaries of the State of New Jersey. It is to be presumed that the Legislature, from 1904 on, intended to and did preempt and exhaust this whole field of licensing.

Compare *North Bergen Twp v Lord*, 131 NJ Super 280; 329 A2d 575 (1974), in which the appellate court reversed the trial court's finding that the defendant, who sold hot dogs from a cart, was not guilty of violating a local health ordinance prohibiting sale of foodstuffs without a permit, noting that it "perceive[d] no logical reason why a health regulation ordinance which by its terms is applicable to all sellers of foodstuffs within the municipality should not be applied to itinerant vendors," further noting that the veteran's licensing statute evidenced "no intention on the part of the Legislature to preempt the entire field of regulating hawkers, peddlers or vendors," and in fact permitted municipal regulation of such activity. *Id.* at 282. Finally, the court noted that the trial

---

[12]   The 1950 amendment provided that "hawking, peddling and vending hereafter may be regulated by municipal ordinance on public boardwalks and public beaches." The 1952 amendment allowed regulation on streets and highways, as well as public boardwalks and beaches. 35 NJ Super 19-20.

court erred in finding the defendant was engaged in a mobile operation and concluded that "[a] veteran's license to hawk, peddle and vend does not authorize the sale of merchandise from a fixed location." *Id.* at 283.

We affirm the circuit court's determination that plaintiff is subject to the conditions set forth in subsection 21.07b of defendant's zoning ordinance regarding operation of his roadstand. We reverse the circuit court's determination that plaintiff must apply for and obtain a permit from defendant in order to operate his roadside stand, when selling his own goods for his direct personal benefit or gain under MCL 35.441; MSA 4.1241.