# Court of Appeals, State of Michigan

# ORDER

David Robert Padecky v Muskegon Charter Township

Docket No. 357470

LC No. 20-004175-CZ

Amy Ronayne Krause
Presiding Judge

Michael J. Kelly

Christopher P. Yates
Judges

The motion for reconsideration is GRANTED, and this Court's opinion issued June 23, 2022, is hereby VACATED. A new opinion is attached to this order.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

September 8, 2022
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID ROBERT PADECKY,

      Plaintiff-Appellant,

v

MUSKEGON CHARTER TOWNSHIP,

      Defendant-Appellee.

FOR PUBLICATION
September 8, 2022
9:00 a.m.

No. 357470
Muskegon Circuit Court
LC No. 20-004175-CZ

ON RECONSIDERATION

Before: RONAYNE KRAUSE, P.J., and M. J. KELLY and YATES, JJ.

RONAYNE KRAUSE, P.J.

Plaintiff, David Robert Padecky, appeals by right the trial court's order granting summary disposition in favor of defendant, Muskegon Charter Township. We vacate and remand.

## I. BACKGROUND

Plaintiff is an honorably discharged military veteran and the holder of a license to sell goods pursuant to MCL 35.441 *et seq.* (the Act[1]). Pursuant to that license, plaintiff operates a mobile hot dog stand. Plaintiff obtained permission from a grocery store located within the Township to operate his stand in the store's parking lot. However, the Township prohibited plaintiff from operating his stand in that location because the grocery store was in a C-1 zoning district. The Township contended that mobile food businesses were only permitted in M-1 zoning

---

[1] Plaintiff refers to this as the "Peddler's License Act," but no such name appears anywhere in the Act, which is entitled "License to Sell Goods" and does not provide a short title.

districts,[2] and even there only by way of a special use permit. Plaintiff recognized the Township's power to enforce its zoning ordinances. However, he contended that requiring him to obtain a special use permit and operate only in M-1 zoning districts violated the Act and effectively prohibited him altogether from operating his stand. The trial court agreed with plaintiff that the Township could not prohibit his operation entirely, but it held that the Township could validly regulate where plaintiff conducted his operations and that the Township had not contravened the Act. It therefore granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(8).[3]

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. at 119. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Id*. at 119-120. The trial court considered evidentiary material beyond the pleadings, so we treat defendant's motion as having been granted pursuant to MCR 2.116(C)(10). *Williams v City of Rochester Hills*, 243 Mich App 539, 547; 625 NW2d 64 (2000). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 120.

The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "Whether a state statute preempts a local ordinance is a question of statutory interpretation and, therefore, a question of law that we review de novo." *DeRuiter v Twp of Byron*, 505 Mich 130, 139; 949 NW2d 91 (2020) (quotation omitted). A zoning ordinance does not conflict with state law by restricting the location of activities expressly authorized by statute, so long as the practical effect of the ordinance does not result in a total ban on that activity. *Id*. at 140-149. Furthermore, "an ordinance is not conflict preempted as long as its additional requirements do not contradict the requirements set forth in the statute." *Id*. at 147.

---

[2] As will be discussed, the Township's zoning ordinance does not seem to have an "M-1" zoning designation, but rather an "M" zoning designation. It appears to be tacitly undisputed that "M" and "M-1" are synonymous for purposes of the zoning ordinance.

[3] The Township had also moved for summary disposition pursuant to MCR 2.116(C)(7), pursuant to which the trial court found plaintiff's claim for money damages barred by governmental immunity. Neither party advances an argument relevant to that issue on appeal.

## III.  THE ACT AND THE ZONING ORDINANCES

Pursuant to MCL 35.441(1), "A veteran may sell his or her own goods within this state if the proceeds from the sale of the goods are to be used for his or her direct personal benefit or gain." There is no dispute that plaintiff qualifies as a veteran under the Act, and proceeds from his hot dog stand are to be used for his direct personal benefit.  The Act provides that he must obtain a license to sell goods, and such a license is to be issued at no cost by the clerk of a county in which the veteran resides.  MCL 35.441(2); MCL 35.442(1).  There is again no dispute that plaintiff held a properly-issued license at all relevant times.  The Act provides that it shall not be construed as contravening the Transient Merchants Act, MCL 445.371 *et seq*.  Neither the Act nor the Transient Merchants Act specifically mention zoning.  However, the Transient Merchants Act explicitly provides that it shall not interfere with a township's regulation of a business "not inconsistent with the provisions hereof."  MCL 445.378.

Plaintiff describes himself as a "peddler," and the Township seemingly does not dispute this characterization.  According to the Township's ordinances:

> *Peddler* means any person, whether a resident of the township or not, traveling by foot, wagon, automotive vehicle or other type of conveyance from place to place, from house to house or street to street, carrying, conveying or transporting goods, wares, merchandise, foods or food products, offering and exposing the same for sale, or making sales and delivering articles to purchasers, who, without traveling from place to place, shall sell or offer the same for sale from a wagon, automotive vehicle, railroad car or other vehicle or conveyance and further provided that one who solicits orders and, as a separate transaction, makes deliveries to purchasers as a part of a scheme or design to evade the provisions of this chapter shall be deemed a peddler subject to the provisions of this chapter.  The term "peddler" shall also include the terms "hawker" and "huckster."  [Muskegon Charter Twp Ord. § 7-1.]

The Township's ordinances generally require peddlers to obtain a municipal license to operate a business within the Township.  Muskegon Charter Twp Ord. § 7-10.  However, the Township expressly exempts veterans such as plaintiff who hold licenses under the Act from the municipal licensure requirement.  Muskegon Charter Twp Ord. § 7-2(b).  Plaintiff does not claim the Township has attempted to improperly require him to obtain a municipal license.

The Township's C-1 zoning district is described as "neighborhood commercial." Muskegon Charter Twp Ord. § 58-256.  The Township's zoning ordinance enumerates a list of permitted uses and special uses.  Muskegon Charter Twp Ord. § 58-257, § 58-258.  Plaintiff has not attempted to argue that his hot dog stand is included under either list.[4]  The Township's ordinances do not list an "M-1" zoning district, but rather an "M" zoning district, described as "commercial/industrial."  Muskegon Charter Twp Ord. § 58-286.  Among other purposes, the goal of the M zoning district is to facilitate situations where it may be in the public interest to "encourag[e] the proximity of uses which would normally be kept separate because they are

---

[4] Our review of the permitted and special uses enumerated for the C-1 zoning district likewise supports the Township's claim that those uses do not include mobile food stands.

classified in different zoning districts." Muskegon Charter Twp Ord. § 58-286(a). As such, there are no permitted uses in the M district. Muskegon Charter Twp Ord. § 58-287. Rather, the M district allows only "special uses," which include "[a]ny use permitted in the I, C-1 or C-2 district" and "[a]ny other use deemed by the township board to be physically, environmentally and socially compatible with the surrounding area and consistent with the purpose of this district." Muskegon Charter Twp Ord. § 58-288(1), (6).

A "special use permit" means "a zoning permit issued to a person or persons intending to undertake the operation of an activity upon land or within a structure for those special uses mentioned in this chapter which possess unique characteristics and are found to be not injurious to the health, safety, convenience, and general welfare of the township's inhabitants." Muskegon Charter Twp Ord. § 58-3. Applications for special use permits may be filed by "[a]ny person owning fee title or equitable interest in the subject property." Muskegon Charter Twp Ord. § 58-52(a). An application must be submitted with a non-refundable fee and a variety of information. Muskegon Charter Twp Ord. § 58-52(b)-(c).

In *Williams*, the plaintiff operated a seasonal roadside stand, and the municipality sought to enforce a zoning ordinance that required operators of such stands to obtain permits. *Williams*, 243 Mich App at 540, 546. This Court considered and found persuasive several Attorney General opinions addressing the interplay between the Act and a local zoning ordinance. *Id*. at 551-557. This Court quoted with approval, *inter alia*, the following passages from Attorney General opinions:

> Consequently, it is our opinion that the legislature intended to provide in substance that veterans should have the right to hawk, vend and peddle within this state including hawking and peddling within municipalities without payment of a fee therefor but that it was not intended that the regulatory provisions of municipal ordinances should be made inapplicable to such veterans. The net result of this is that although veterans holding licenses under the state act must comply with municipal police regulations, they may not be compelled to pay a fee for the privilege of exercising the right to hawk and peddle which has been given by the state.
>
> * * *
>
> It follows, therefore, that a license regularly issued to a veteran under the terms and conditions of [the Act] entitled him to hawk, vend and peddle his own goods, wares and merchandise anywhere within the state of Michigan, including cities and villages within this state, without further license authority from such cities and villages; provided, however, that the licensee does not conduct said business in a manner to bring himself within the definition of an "itinerant vendor" or "transient merchant" as defined by the statutes above referred to; subject, however, to the reasonable police regulations of such cities and villages regulating and prescribing certain streets or public places therein where all hawking, vending or peddling is to be limited or suppressed. [*Id*. at 554-555 (emphases added by the *Williams* Court omitted, internal quotations and citations omitted).]

This Court concluded that, pursuant to the Act, the municipality could not require the plaintiff to obtain a license, but the municipality could require the plaintiff to comply with other conditions of operating the stand. *Id*. at 557-559.

## IV. ANALYSIS

Plaintiff expressly recognizes that the Township has the power to regulate, at least to some extent, the location of his business pursuant to its zoning power. The gravamen of plaintiff's argument is that the Township may not effectively prohibit veterans who hold licenses under the Act from selling goods under the guise of zoning regulations. We agree. A closer question is whether the Township's ordinances have that effect under the circumstances.

The parties both rely on *Williams*, but *Williams* is not directly on point because the issue in that case was whether the plaintiff could be required to obtain a permit to operate his business at all—the location of the business was seemingly never challenged. Nevertheless, *Williams* unambiguously established that the Act does not preempt zoning altogether. Plaintiff does not attempt to argue otherwise. Furthermore, more specifically, the plain import of the Attorney General opinion quoted above is that the Act does not preclude municipalities from imposing limitations on where veterans may conduct their sales of goods pursuant to a license granted under the Act. Although plaintiff has a right to sell goods within the Township, he does not necessarily have the right to do so in his most-preferred place and manner. It necessarily follows that the Township may validly enact a zoning ordinance restricting mobile food stands, such as plaintiff's hot dog stand, to a single zoning district.

The Township's zoning ordinance therefore clearly does not conflict with the Act merely by restricting mobile food stands to a single zoning district. However, this conclusion depends upon the practical availability of that zoning district. Plaintiff argues that the Township has not shown that any property is M zoned. At this stage of proceedings, it is plaintiff's obligation to make some kind of initial showing that no such property exists or is suitable for a mobile food stand, perhaps by reference to a zoning map. We make no findings in that regard, but we emphasize that *if* there is no M zoned property within the Township that could be practically suitable for plaintiff's mobile food stand, then the Township's zoning ordinance would indeed conflict with—and be preempted by—the Act. Conversely, we agree with the Township that a mobile food stand inherently depends upon obtaining permission from a landowner to operate on the premises. The Township obviously must refrain from actively discouraging landowners from granting such permission, but it is not the Township's burden to guarantee such permission.[5]

Presuming the existence of M zoned property that would be potentially suitable for a mobile food stand, the more interesting and difficult question arises from the fact that *all* uses in M zoning districts are special uses that must be sought by a permit. Special use permits under the Township's ordinances, at least in the M zoning district, are seemingly not dispensations to conduct activities otherwise forbidden, but rather are intended to ensure that certain kinds of uses

---

[5] Put another way, the Township cannot be faulted if plaintiff is unable to persuade a property owner to let him operate his stand on the property—so long as suitable property does actually exist.

are conducted in a safe and appropriate manner. See Muskegon Charter Twp Ord. § 58-51. This Court has held that a special use permit requirement, under an ordinance with similar goals, did not have the effect of precluding a particular use. *Landon Holdings, Inc v Grattan Twp*, 257 Mich App 154, 170-171; 667 NW2d 93 (2003). Pursuant to *Williams*, municipalities may not require veterans to obtain permits to operate their sales of goods or pay for the privilege of selling goods, but municipalities may require veterans to comply with regulations addressing the place and manner in which they sell goods. We therefore do not think *Williams* stands for the principle that the Act entitles veterans to forego *any and all* procedural requisites that may be imposed by a municipality before selling goods. Depending on how the Township's ordinance is construed, its special use permit requirement may therefore be permissible under the Act.

First, plaintiff points out that the plain language of the Township's ordinance requires an applicant for a special use permit to have "fee title or equitable interest in the subject property." Muskegon Charter Twp Ord. § 58-52(a). Operation of a mobile food stand is obviously unlikely to entail fee ownership of the property upon which such a stand may happen to be placed. Plaintiff rightly observes that it would be extremely burdensome, and possibly impossible, for him to have a fee owner seek a special use permit on his behalf. There is a vast qualitative difference between, on the one hand, merely telling a person that he may operate a food stand in the parking lot, and on the other hand, going to the trouble of seeking a permit on behalf of that person. However, the ordinance does not define "equitable interest," and we have found no clear definition of the term in any binding authority. We hold that, for the ordinance to be upheld, permission from the landowner must, under the circumstances, be considered an adequate "equitable interest" in the subject property for purposes of applying for a special use permit. To hold otherwise would be to effectively prohibit plaintiff's operation entirely.

Secondly, it should be obvious that the Township may not charge plaintiff a fee for seeking a special use permit, so the application fee must be waived. Conversely, the Township may properly require plaintiff to provide information in his application, to the extent relevant.[6] Finally, the granting of the special use permit must be an ultimately foregone conclusion: pursuant to the Act, plaintiff has a right to conduct sales of goods in the Township. The Township may use the special use permit process for the limited purpose of ensuring that plaintiff carries on his sale of goods in an appropriate location and manner, but no more. As noted, we do not believe it is the Township's obligation to ensure that plaintiff has permission from a landowner. However, it *is* the Township's obligation to ensure the existence of some property that might be appropriate for a mobile food stand—if necessary, by *sua sponte* rezoning some other zoned property.[7] At this

---

[6] For example, the ordinance requires applicants to provide "preliminary plans and outline specifications of the proposed development." Muskegon Charter Twp Ord. § 58-52(c)(3). We have difficulty imagining how such a requirement would apply to a hot dog stand. The Township may require information necessary to assure itself that the stand is being operated in a safe and appropriate manner, but it may not erect disguised roadblocks.

[7] Nothing in this opinion should be construed as a presumption that rezoning *is* necessary.

stage of the proceedings, however, it is plaintiff's obligation to show that no appropriate M zoned property exists.[8]

Having so held, we conclude that resolution of the appropriate relief to be granted is better determined by the trial court in consideration of further briefing, and argument or discovery at its discretion, with the benefit of our opinion in this matter. We therefore vacate the trial court's order granting summary disposition, and we remand for further proceedings and factual development not inconsistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full and a question of public interest being involved. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Michael J. Kelly
/s/ Christopher P. Yates

---

[8] In its motion for reconsideration, the Township argues that it should be permitted to explore on remand whether it is indeed possible for plaintiff to sell his hot dogs without engaging in rezoning. The Township misunderstands our holding: not only may the Township do so, but it is plaintiff's burden to show that it is *not* possible.