CHANDLER v DOWELL SCHLUMBERGER INCORPORATED

Docket No. 104864. Argued November 6, 1997 (Calendar No. 17). Decided January 21, 1998.

Joseph W. Chandler brought an action in the Midland Circuit Court against Dowell Schlumberger Incorporated under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, alleging that he was discharged from his employment because the defendant believed that he had reported violations of the law to the Department of Transportation. The court, Paul J. Clulo, J., granted the defendant's motion to dismiss the case, holding that the act did not protect the plaintiff. The Court of Appeals, GRIBBS, P.J., and MARKMAN, J. (D. E. SHELTON, J., dissenting), affirmed (Docket No. 166009). The plaintiff appeals.

In a unanimous opinion by Justice KELLY, the Supreme Court *held*:

The Whistleblowers' Protection Act does not shield an employee who is erroneously perceived to be a whistleblower and subsequently discharged from employment.

1. To establish a prima facie case under the Whistleblowers' Protection Act, it must be shown that the plaintiff was engaged in protected activity as defined by the act, the defendant employer discharged the plaintiff, and a causal connection exists between the protected activity and the discharge. Protected activity consists of reporting to a public body a violation of law, regulation, or rule; being about to report such a violation to a public body; or being asked by a public body to participate in an investigation.

2. Because the plaintiff has not alleged that he reported a violation of the law to a public body, that he was about to do so, or that he was requested to participate in a public investigation, the plain language of the statute does not protect him. He failed to state a prima facie case under the act.

Affirmed.

214 Mich App 111; 542 NW2d 310 (1995) affirmed.

*Mathieu & Lee* (by *James H. Mathieu*) for the plaintiff.

*Barry B. George* for the defendant.

KELLY, J. We granted leave in this case to decide whether the Whistleblowers' Protection Act[1] shields an employee who was discharged under the erroneous perception that he reported a violation of law. We conclude that the statute does not protect such an employee.

I

Defendant Dowell Schlumberger Incorporated (DSI) hired the plaintiff on June 4, 1989, as a field engineer trainee. It promoted him to field engineer on November 11, 1990.

On April 6, 1992, the Michigan Department of Transportation, acting on a tip, cited DSI for carrying hydrochloric acid in a trailer not properly certified to carry it. Over the next week, plaintiff's supervisor, Joseph Shurell, sought the identity of the person who had reported the violation to MDOT. On April 13, 1992, Shurell called plaintiff to his office, questioned him about who reported the violation, and fired him.

Plaintiff filed the present action under the Whistleblowers' Protection Act (WPA). In his complaint, he alleged that Shurell discharged him because Shurell believed that plaintiff had reported violations of the law to MDOT. Among other things, the WPA makes it illegal for an employer to retaliate against an employee because the employee has reported a violation of the law.

When defendant moved to dismiss the case under MCR 2.116(C)(10), Midland Circuit Court Judge Paul J. Clulo granted the motion, holding that the WPA did

---

[1] MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*

not protect plaintiff. He later denied plaintiff's motion for reconsideration. Plaintiff then appealed to the Court of Appeals, which affirmed. 214 Mich App 111; 542 NW2d 310 (1995). We granted plaintiff's application for leave to appeal. 454 Mich 906 (1997).

II

This Court is asked to review the trial court's grant of defendant's motion for summary disposition under MCR 2.116(C)(10). In deciding a motion under subrule (C)(10), the trial court views affidavits and other documentary evidence in the light most favorable to the nonmoving party. *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 610; 566 NW2d 571 (1997). Our review is de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996). See *Weymers v Khera*, 454 Mich 639; 563 NW2d 647 (1997).

III

A

Plaintiff sues under § 2 of the Whistleblowers' Protection Act. It provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or

inquiry held by that public body, or a court action. [MCL 15.362; MSA 17.428(2).]

When construing a statute, we begin by recognizing that "[w]here the legislative intent is clearly expressed, it is entitled to the utmost respect." *People v Waterman*, 137 Mich App 429, 432-433; 358 NW2d 602 (1984). We explained the process recently:

> The cardinal rule of all statutory construction is to identify and give effect to the intent of the Legislature. The first step in discerning intent is to examine the language of the statute in question. We read the language according to its ordinary and generally accepted meaning. Judicial construction is authorized only where it lends itself to more than one interpretation. We also consider that remedial statutes, such as the Whistleblowers' Protection Act, are to be liberally construed, favoring the persons the Legislature intended to benefit. [*Shallal, supra* at 611 (citations omitted).]

B

Plaintiff alleges that he was fired because DSI believed it was he who blew the whistle. Accordingly, plaintiff is a "perceived whistleblower" and points to an opinion of this Court providing protection under the Michigan Handicappers' Civil Rights Act[2] to those who are "perceived to be handicapped." *Sanchez v Lagoudakis*, 440 Mich 496, 503; 486 NW2d 657 (1992). Plaintiff argues that, because the employer has undertaken the action the statute appears to forbid, firing an employee believed to have reported a violation, the act should punish the employer. Plaintiff's argu-

---

[2] MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*

ment requires us to examine the Whistleblowers' Protection Act.

Recently, we recognized that a plaintiff must establish three elements to make a prima facie case under § 2 of the WPA. *Shallal, supra* at 610. The plaintiff must show that (1) he was engaged in protected activity as defined by the act, (2) the defendant discharged him, and (3) a causal connection exists between the protected activity and the discharge. *Id.*

"Protected activity" under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation. MCL 15.362; MSA 17.428(2). Plaintiff has not alleged that he reported a violation of the law to a public body or that he was about to report such a violation. Nor does plaintiff allege that he was requested to participate in a public investigation of any kind. In fact, plaintiff has made clear that he was *not* the person who reported the employer's violation to the MDOT.

The plain language of the statute does not protect plaintiff. The ordinary and generally accepted meaning of the words "reports," "about to report," and "requested by a public body to participate in an investigation" do not encompass plaintiff's actions in the present case. The words are clear and do not readily lend themselves to more than one interpretation. As we noted in *Shallal*, "the implication is that the language of the Whistleblowers' Protection Act intentionally reduces employee protection the more removed the employee is from reporting to a public body." *Id.* at 613 (citation omitted).

There is no sliding scale in the WPA based on the employer's intent. Regardless of the quantum of proof of the employer's ill will, the act requires an employee to prove he was engaged in protected activity. The statute does not provide that the more obvious the employer's bad behavior, the less the plaintiff is required to do. In fact, almost the opposite is true. This is evident from the requirement that an employee seeking protection under the "about to report" language of the act prove his intent by clear and convincing evidence. See MCL 15.363(4); MSA 17.428(3)(4). As we noted above, the statute reflects the intent of the Legislature that the further an employee is from reporting, the harder it is for an employee to prove a violation under the WPA.

C

Plaintiff points to this Court's opinion in *Sanchez v Lagoudakis, supra.* In that case, the Court read language in the Michigan Handicappers' Civil Rights Act (MHCRA) similar to § 2 of the WPA to protect a person who was perceived to have a handicap.[3] However, plaintiff's comparison fails, because none of the factors that led the Court to interpret the MHCRA to protect one who is regarded as having a handicap demands the same result under the Whistleblowers' Protection Act.

First, the Michigan Civil Rights Commission, the agency charged with interpreting the meaning of the MHCRA on a daily basis, determined that the act pro-

---

[3] At the time of the case, subsection 202(1)(b) provided that an employer shall not "[d]ischarge or otherwise discriminate against an individual . . . because of a handicap . . . ." MCL 37.1202(1)(b); MSA 3.550(202)(1)(b). *Sanchez, supra* at 502.

tected one regarded as having a handicap. *Id.* at 503. Here, there is no claim that any state agency has determined that the statute should be read to protect "perceived whistleblowers."

Second, the *Sanchez* Court reviewed decisions from many other states, finding that "[c]ourts in other jurisdictions with discrimination laws similar to the act have consistently construed their statutes to protect persons perceived to be handicapped." *Id.* Here, there is no overwhelming support for the definitional change in other jurisdictions, as there was under the MHCRA. In the whistleblower context, "laws similar to the [WPA]" are sufficiently different definitionally to make comparison between them on this issue ineffective. In the handicappers' arena, the United States Supreme Court and many states determined that one regarded as having a handicap should be protected. Here, Michigan's WPA gives broader protection than do most other states, so there is little with which to compare it.

Plaintiff points to this Court's majority opinion in *Shallal, supra,* which analogized between qui tam actions under the False Claims Act[4] and the WPA. Plaintiff asserts that he would recover in a qui tam action under the False Claims Act. The argument fails. First, the analogy to the qui tam provisions was not necessary to the Court's opinion in *Shallal.* Second, the definition of protected activity under qui tam is very different from that under the WPA. Under the qui tam provision, one could engage in protected activity by simply observing the wrongful activity and confronting the wrongdoer. See *Shallal, supra* at 618.

---

[4] 31 USC 3730. See *Shallal, supra* at 616-619.

There is no corresponding "confrontation" protection under the WPA. Instead, to come under the protection of the statute, a worker must engage in protected activity. Because the definitions of the two statutes differ on this specific issue, the analogy fails.

Third and most importantly, the Court noted that the Legislature had amended the MHCRA in 1990, changing the definition of "handicap" to include " '[b]eing regarded as having' a handicap." *Sanchez* at 506. On that basis, we held that denying protection to one perceived to have a handicap would go against the purpose and policy of that act. Here, there is no legislative amendment of the act to clarify the Legislature's meaning.

Therefore, we determine the intent of the Legislature in enacting the bill from the words of the statute itself. The WPA, it appears, represents the Legislature's judgment that one may best combat employer corruption and criminally irresponsible behavior by protecting employees who report that behavior to a public body. Protection under the act extends only to those employees engaged in protected activity as defined by the act, and plaintiff does not qualify for that protection.

> [T]he Michigan Legislature has seen fit to require either actual reporting or proof by clear and convincing evidence that an employee was "about to report." It has refused to bring within the protection of the act an employee who discusses reporting and who approaches the employer and threatens to report, but takes no further action. Perhaps this is regrettable and should be remedied. However, the lawmaking that is appropriate is legislative, not judicial. [*Shallal, supra* at 626-627 (KELLY, J., concurring in part and dissenting in part).]

The Legislature has chosen to define the group of persons covered by the act. We conclude that denying protection to plaintiff does not go against the legislative intent behind the enactment of the WPA.

D

Today's opinion is consistent with recent decisions under the WPA. In *Dickson v Oakland Univ*,[5] the Court of Appeals held that the WPA did not protect an employee who reported a violation by a co-worker. The panel held that the act extended only to reported violations of the employer.

This Court disagreed with *Dickson* in *Dudewicz v Norris Schmid, Inc.*[6] In *Dudewicz*, the employee had reported a violation of the law by a co-worker. This Court held the WPA protected an employee who reported violations of his fellow employees.

More important for our discussion today is the Court's understanding in *Dudewicz* that the WPA would not apply to protect one who does not engage in protected activity. In distinguishing the results in *Dickson* and *Dudewicz*, we stated: "Forgetting for a moment who broke the law, the plaintiff in *Dickson* reported the violation only to his employer, not to a public body within the meaning of the WPA. On these facts, the panel correctly found that the WPA was inapplicable." *Dudewicz, supra* at 77, n 4.

Although dicta, this reasoning supports the Court's conclusion today that the WPA does not apply to protect plaintiff. Like the plaintiff in *Dickson*, plaintiff here has not reported to a public body, nor does he

---

[5] 171 Mich App 68; 429 NW2d 640 (1988).

[6] 443 Mich 68; 503 NW2d 645 (1993).

allege that he was about to report. Here, as in *Dickson*, the WPA is inapplicable.

This Court has twice considered the WPA in the last year. First, in *Dolan v Continental Airlines*,[7] the Court followed *Dudewicz* and held that the act protected an employee who reported a suspected violation by someone who was neither her employer nor a co-worker. *Id.* at 381. The plaintiff in *Dolan* was a ticket agent for Continental Airlines. *Id.* at 374. She was asked to report to the federal Drug Enforcement Agency passengers fitting a drug courier profile. *Id.* at 375. She reported two such persons. Continental then issued a memo forbidding employees from reporting without its permission. *Id.* After the memo was disseminated, the plaintiff called the DEA again, and Continental fired her. *Id.* at 375-376. She alleged that, when she placed the postmemo call to the DEA, it was merely to inquire about her reward. *Id.* at 376.

In *Dolan*, we held that "[a] plain reading of the WPA reveals that employees who report violations or suspected violations of the law to a public body are entitled to protection under the act." *Id.* at 381. We held that the plaintiff there could recover even though the violation she reported was not that of her employer or of a co-worker. *Id.* at 382. The act was broad enough to cover violations of the law by a third person.[8]

Finally, in *Shallal, supra*, an employee alleged that she was "about to report" and had expressly declared

---

[7] 454 Mich 373; 563 NW2d 23 (1997).

[8] It is undisputed that the violation reported here was sufficient to trigger the protection of the act. As in *Dolan*, we decline to decide what connection between the violation and the employment, if any, is required. *Dolan, supra* at 382.

it to her employer. A majority held that, inter alia, the plaintiff's acts could provide sufficient evidence of intent for a reasonable juror to find by clear and convincing evidence that she was "about to report." 455 Mich 619-620. Of course, the present case is easily distinguishable because, unlike the plaintiff in *Shallal*, plaintiff here does not allege that he was about to report.

The portion of our opinion in *Shallal* relevant for purposes of the present case relates to the majority's understanding of the limits of the WPA's protection. The majority in *Shallal* noted that "[a]n employee is engaged in protected activity under the Whistleblowers' Protection Act who has reported, or is about to report, a suspected violation of law to a public body." *Id.* at 610. Because the plaintiff there could not prove that she actually reported, her only other chance for protection under the statute was to qualify under the second option. "Hence, Shallal had the burden of establishing that a question of fact existed regarding whether she was 'about to' report [a] violation to a public body." *Id.* at 611. Implicit in the majority's statement is the conclusion that the plaintiff's only other means for protection under the WPA was to prove she was "about to report."[9]

The majority understood that protection under the WPA was limited, and recognized one of the limitations the Legislature placed on the scope of the WPA. The Legislature could have defined protected activity to include confrontation, as in the False Claims Act. It could have allowed employees to recover without a

---

[9] We express no opinion on the meaning of the statutory language regarding being "requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action."

showing of reporting or being about to report. It did neither. Instead, the Legislature defined protected activity as reporting a violation or being about to report one. The Legislature can and may rewrite the statute, but we will not do so.

IV

The WPA, as a remedial statute, is to be liberally construed to favor the persons the Legislature intended to benefit. *Shallal, supra* at 611. The Whistleblowers' Protection Act was intended to benefit those employees engaged in "protected activity" as defined by the act. The act protects those who report or are about to report violations of a law, regulation, or rule to a public body. It protects those requested by a public body to participate in an investigation. Because one who engages in no "protected activity" under the act is not intended to benefit from its operation, our decision does not affect the remedial nature of the act. Instead, we reaffirm the broad protection given to those employees who engage in protected activity, and merely recognize that not all employees are covered.

V

Plaintiff failed to state a prima facie case under the Whistleblowers' Protection Act because he could not show facts from which to conclude that he was engaged in a protected activity. He did not allege that he reported a violation of a law, regulation, or rule, or that he attempted to report. We decline to extend coverage to one who is perceived to be a whistleblower, but who has not otherwise engaged in protected activity as defined by the act.

We affirm the decision of the Court of Appeals.

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, and TAYLOR, JJ., concurred with KELLY, J.