**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0279n.06

Case No. 15-2121

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 23, 2016
DEBORAH S. HUNT, Clerk

MICHELE CAMPBELL,                        )
                                         )
    Plaintiff-Appellant,                 )
                                         )
                                         )      ON APPEAL FROM THE UNITED
v.                                       )      STATES DISTRICT COURT FOR
                                         )      THE EASTERN DISTRICT OF
G4S SECURE SOLUTIONS (USA) INC.,         )      MICHIGAN
                                         )
    Defendant-Appellee.                  )

BEFORE: BOGGS, ROGERS, and STRANCH, Circuit Judges.

BOGGS, Circuit Judge. G4S Secure Solutions fired Michele Campbell in June 2013. Several months earlier, Campbell had reported to her supervisor that two G4S employees (one the son of a manager for a major client) had been falsifying reports. Convinced that she was terminated for reporting on the manager's son, Campbell filed suit against G4S for violating Michigan's Whistleblowers' Protection Act (WPA). The district court granted summary judgment to G4S because Campbell did not present clear and convincing evidence that she was about to report the alleged violations to a public body. We agree and affirm the judgment.

I

General Motors (GM) hires contractors to manage fire safety and prevention at various sites. One such contractor, G4S Secure Solutions, hired Michele Campbell as a fire chief to

oversee compliance and inspection at a GM facility in Milford, Michigan. In that role, Campbell reported to James Krumbach and managed the fire officers who inspected the facility.

In January 2013, Campbell shared with Krumbach her suspicion that two fire officers, Chad Webster and Michael Stevenson, were falsifying reports to hide their shirking of inspection duties. At the time, Webster's mother, Beth Webster, was a quality-assurance manager for GM. Krumbach told Campbell to explore further and report back. In March 2013, Campbell gave Krumbach a document summarizing her conclusion that Webster and Stevenson had falsified reports along with copies of their inspection and attendance logs. Krumbach told Campbell that he would handle things from there. Campbell was aware that Krumbach discussed the matter with his supervisor and planned to speak with Beth Webster specifically about her son's performance.

In May 2013, before the issue was resolved, Krumbach was hired by GM and Gail Pyne filled his former position with G4S. Pyne had known Beth Webster for nearly twenty years and sometimes socialized with her. Shortly after replacing Krumbach, Pyne learned of what was said to be "a special supervisor attendance/time off policy." Further investigation revealed that with Krumbach's support, Campbell had devised and implemented a more favorable attendance policy for G4S supervisors "[b]ecause the supervisors didn't get a raise." Pyne questioned Campbell, who admitted instructing fellow supervisors "to keep [the policy] quiet and not discuss it" with subordinates. On May 22, 2013, Pyne submitted a report of her findings to her supervisor, Operations Manager Donald Drent, and recommended removing Campbell from the GM account. After consulting with the G4S Human Resources Department and several colleagues in management, Drent agreed. Campbell was informed of the decision on May 30,

2013.  On June 8, 2013, G4S discharged Campbell because "no other positions at her level, within the regional area, were available."

Campbell filed suit, alleging that G4S violated the WPA, Mich. Comp. Laws § 15.361 *et seq.*  The complaint claimed that Campbell was fired because she told her supervisors "that she felt obligated" to report Webster's violations to the federal Occupational Safety and Health Administration (OSHA) and the Michigan Occupational Safety and Health Administration (MIOSHA).  Campbell described that plan in her deposition testimony:

> Q.  Have you ever made any complaint to OSHA or [MIOSHA]?
> A.  No, but I was going to report it.  I was about to report the findings that I investigated on Chad Webster.
> Q.  So you've never made any complaint to OSHA or [MIOSHA]?
> A.  I did not physically file anything, no, but I was going to report.
> Q.  When you say you were going to report, do you know where you would report to?
> A.  To [MIOSHA].
> Q.  How would you do that?
> A.  I don't know.  I'd have to investigate.  I was investigating on how to do it after I brought my investigation to Jim Krumbach, my supervisor, about the findings of Chad Webster, who did not do his job.
>
> ***
>
> Q.  And am I also correct that you never told Krumbach that you were going to go to [MIOSHA] or OSHA with any of this information?
> A.  No.  I reported it to him and he said he was going to take care of it, and then when he left, that's when I was looking into I needed to report this [sic], because they didn't do their job.
> Q.  But you never told anyone that you were thinking about reporting it, did you?
> A.  No, I did not tell anybody, but I was going to report it.

After discovery, G4S moved for summary judgment.  The district court granted the motion, reasoning that Campbell did not establish the first element of a prima facie retaliation claim because she failed to show that she engaged in a protected activity under the WPA.  The district court went on to note that, even if she had, her claim would still fail because she did not

established a causal connection between protected activity and her firing or show that G4S's stated reason for firing her was a pretext for the discharge. Campbell appealed on each ground.

## II

This court reviews a district court's grant of summary judgment de novo. *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016). Summary judgment is appropriate when the record shows no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). If a "reasonable jury" could decide in favor of the nonmoving party, the dispute about material fact is genuine and summary judgment is unwarranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016).

The WPA provides in relevant part:

> An employer shall not discharge . . . an employee . . . because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362. Michigan courts apply a burden-shifting framework to WPA claims. *Debano-Griffin v. Lake County*, 828 N.W.2d 634, 638 (Mich. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff proves a prima facie WPA case, the burden shifts to the defendant to show a "legitimate business reason" for the discharge. *Taylor v. Modern Eng'g, Inc.*, 653 N.W.2d 625, 628 (Mich. Ct. App. 2002). If the defendant makes that showing, the burden shifts back to the plaintiff to prove that the legitimate reason was a pretext for the discharge. *Ibid.*

To make a prima facie case, Campbell must show that (1) she was engaged in an activity protected by the WPA, (2) G4S fired her, and (3) there is a causal connection between those actions. *Debano-Griffin*, 828 N.W.2d at 638. We agree with the district court that this case can be resolved in favor of G4S on the first element.

The WPA protects employees who report a violation to a public body, are about to report a violation to a public body, or are asked by a public body to participate in an investigation. *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 212 (Mich. 1998). Campbell argues that she was about to report Webster's and Stevenson's conduct to OSHA and MIOSHA. The further an employee is from actually reporting the alleged violation to a public body, the less protection the WPA provides. *Shallal v. Catholic Soc. Servs. of Wayne Cty.*, 566 N.W.2d 571, 576 (Mich. 1997). In *Shallal*, Michigan's highest court examined the dictionary definition of "about" and seemed to imply that an employee "about to report" a violation must be "on the verge of" doing so. 566 N.W.2d at 575; *see also id.* at 581 (Kelly, J., concurring in part and dissenting in part). Subsequent courts have also required that plaintiffs bringing about-to-report WPA claims be "on the verge" of reporting. *See, e.g.*, *Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798, 805–06 (E.D. Mich. 2014); *Jennings v. County of Washtenaw*, 475 F. Supp. 2d 692, 711 (E.D. Mich. 2007); *Trosien v. Bay County*, No. 257363, 2005 WL 3505746, at *3 (Mich. Ct. App. Dec. 22, 2005) (per curiam); *Richards v. Metron Integrated Health Sys.*, No. 242502, 2004 WL 443991, at *1 (Mich. Ct. App. Mar. 11, 2004) (per curiam).

The WPA imposes the heightened "clear and convincing evidence" standard of proof on plaintiffs who proceed on the theory that they were about to report a violation. Mich. Comp. Laws § 15.363(4); *see also Shallal*, 566 N.W.2d at 575. It is "the most demanding standard applied in civil cases." *In re Martin*, 538 N.W.2d 399, 410 (Mich. 1995). The plaintiff must

"produce[] in the mind of the trier of fact a firm belief or conviction" regarding the allegations'

truth; that is, "a clear conviction, without hesitancy, of the truth of the precise facts in issue."

*Ibid.* (citation omitted).

No reasonable jury could find by clear and convincing evidence that Campbell was about

to report Webster's and Stevenson's conduct to a public body. In her complaint, Campbell

alleged that she "told her [s]upervisors that she felt obligated to report the violations to the State

of Michigan Department of Labor and . . . OSHA" and that "she threatened to go to legal

authorities to report [Webster's] actions." But her deposition testimony tells a different story.

Campbell admitted that before G4S discharged her, she visited the OSHA and MIOSHA

websites but had not investigated how to report a violation because Krumbach "was going to

take care of it." As Campbell attested, she had not "t[old] anybody" of her plan. The only

evidence that Campbell was *about to* report the alleged violations is her own deposition

testimony to that effect.[1]   *See* R. 20-3 at 615 ("I was going to report it."). Merely telling a

superior of an alleged violation and testifying to having visited a regulatory agency's website and

intending to later report the violation do not clearly and convincingly demonstrate that an

employee was about to report.

Campbell points to no case where the first element of an about-to-report WPA claim

rested on such scant evidence. Both cases that Campbell cites contain far more compelling

evidence of a plaintiff who is on the verge of reporting a violation. The *Shallal* plaintiff told her

supervisor, "[I]f you don't straighten up . . . I will report [you] to the [D]epartment [of Social

---

[1] Campbell presents an additional piece of evidence: She "provided G4S with documents . . . downloaded from the OSHA and [MIOSHA] websites." Appellant Br. 20. That conclusion relies on, but belies, her deposition testimony. In support, Campbell cites a confusing moment during the deposition where she responded in the affirmative when asked whether her report to Krumbach included information from the OSHA and MIOSHA websites. However, she then responded in the negative when the attorney asked the clarifying question, "[W]as th[e OSHA information] part of what you gave to Jim Krumbach?"

Services], to the board, anybody, everybody." 566 N.W.2d at 576; *see also Talhelm v. ABF Freight Sys., Inc.*, 364 F. App'x 176, 182 (6th Cir. 2010). At her deposition, the *Shallal* plaintiff supported that statement with calendar entries of conversations with colleagues concerning whether to report. 566 N.W.2d at 576. In *Fogwell v. Klein*, No. 223761, 2001 WL 1134883, at *1 (Mich. Ct. App. Sept. 25, 2001) (per curiam), the plaintiff became concerned about her employer's billing practices and thus copied office records, sought legal advice, and requested a complaint form from a public body. The plaintiff then informed the employer of her concerns. *Ibid.* When the plaintiff was nonresponsive after the employer asked whether she intended to pursue the issue, the plaintiff was fired. Unlike Campbell, the plaintiffs in *Shallal* and *Fogwell* communicated to their employers the possibility that they would report alleged violations and presented evidence corroborating the sincerity of those threats.

More on point are WPA cases where the evidence was insufficient to indicate that the plaintiff was actually about to report an alleged violation. *See e.g.*, *Allen v. Charter County of Wayne*, 192 F. App'x 347, 352–53 (6th Cir. 2006) (deposition testimony showed that plaintiff had not "formed an intent to volunteer information to the authorities"); *Pope v. Brinks Home Sec. Co.*, No. 294600, 2011 WL 711133, at *7 (Mich. Ct. App. Mar. 1, 2011) (per curiam) (testimony that plaintiff told defendant of plan to report, without evidence of "other steps," was "not enough to meet the requisite clear and convincing standard"); *Trosien*, 2005 WL 3505746, at *3 ("lengthy period of time" elapsed between threats to report and discharge, and plaintiff never took "concrete action"); *Richards*, 2004 WL 443991, at *2 (plaintiff made several threats to report coworker to superiors and, possibly, public body but believed that the coworker "was going to handle the issue").

III

Campbell argues that she was fired as punishment for shining a light on an irresponsible employee who happened to be the son of an influential manager for a major client. However legitimate that complaint may be, the WPA "does not provide that the more obvious the employer's bad behavior, the less the plaintiff is required to" prove. *Chandler*, 572 N.W.2d at 213. There is no clear and convincing evidence that Campbell was about to report Webster or Stevenson to a public body. We therefore AFFIRM the district court's grant of summary judgment based on Campbell's failure to establish the first element of a prima facie WPA case. Accordingly, we do not address G4S's alternative arguments for affirmance.