*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH SOBOLEWSKI as Personal
Representative of the ESTATE OF DOROTHY
ANN SOBOLEWSKI,

UNPUBLISHED
April 25, 2024

Plaintiff-Appellant,

v

No. 366329
Washtenaw Circuit Court
LC No. 20-001314-NH

MICHALANNE SILVESTER, RAMDANE
HADJEM, BARBARA GUSWAY, and
UNIVERSITY OF MICHIGAN REGENTS, doing
business as MICHIGAN MEDICINE,

Defendants-Appellees.

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff Kenneth Sobolewski, as personal representative of the Estate of Dorothy Ann Sobolewski, appeals as of right the trial court's order granting summary disposition of plaintiff's ordinary negligence claims against defendant radiology technologists Michalanne Silvester, Ramdane Hadjem, and Barbara Gusway, and defendant the University of Michigan Regents, doing business as Michigan Medicine. Plaintiff argues that the trial court erred in granting defendants' motion because his claims sounded in ordinary negligence, rather than medical malpractice. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Sobolewski went to the University of Michigan main hospital for a computed tomography (CT) scan of her chest. When Ms. Sobolewski's daughter Laura Newton made the appointment the day before, she advised the scheduler that Ms. Sobolewski would need "a couple of people or a Hoyer lift" to assist her during the procedure. Ms. Sobolewski was wheelchair-bound because she was obese and had prior medical issues, including hip surgery.

Ms. Sobolewski's other daughter, Theresa Repovz, drove Ms. Sobolewski to the CT appointment. When they arrived at valet parking, Ms. Sobolewski transferred from the car to a

-1-

wheelchair with Repovz's assistance. After Ms. Sobolewski checked in, hospital staff wheeled her to another area while Repovz remained in the waiting room.

Hadjem testified that he remembered Ms. Sobolewski as a heavier patient in a wheelchair, and that she was there to have a chest CT scan with contrast. Once in the CT room, Hadjem asked Ms. Sobolewski how she got into her wheelchair, and she explained she had pivoted from the car to the wheelchair. It was his routine practice to ask this question when a patient is in a wheelchair.

According to Hadjem, Ms. Sobolewski mentioned she used a walker, so he asked her if she could stand and pivot onto the CT table, and she said yes. She stood up for a short period of time, but Hadjem thought he would feel more comfortable with additional help, so Ms. Sobolewski sat back down in the wheelchair, and Silvester came in to assist. Ms. Sobolewski stood up again with both of them, but she was slow which worried Hadjem and Silvester, so they sat her down in the wheelchair again and Gusway came in.

Hadjem testified that they then asked Ms. Sobolewski if she would rather use the Hoyer lift, which would lift her onto the table, but she refused. As a result, they decided to get her close to the table and use a foot stool so that with their help, she could push herself onto the table. However, that plan failed. According to Hadjem:

> So she got up, again we tried to get her on the table, she couldn't. So we decided just that's it, we're not going to try again. We tried to get her back on the wheelchair and she kind of lost balance and sat back on the wheelchair with, my understanding, her foot—she was in pain, she started getting in pain, her foot, one of her legs got stuck, I'm not quite sure where because I was focused and my angle didn't allow me to see what's happening.

In her deposition, Silvester testified that it is her practice to look at a snapshot of information provided for patients having CT scans. However, she also speaks to a patient about his or her ambulatory capabilities. In this instance, she noticed Hadjem needed assistance, and she spoke with Ms. Sobolewski about her capabilities. According to Silvester, Ms. Sobolewski indicated that she could step over to the CT table, and did not want to use the Hoyer lift. Silvester testified:

> We went to transfer the patient to the table. She stood up. [Hadjem] was in front of her. I was to the side to—like kind of on an angle in back of her guiding her bottom to the table. So we had her stand, pause, make sure she had her bearings, turn her bottom to the table, and when we got to that point, I offered the stepstool, which had a handle, to get her bottom onto the table, like give herself a boost. She said, no, she was unable to do that. That's when I said, if we're going to continue, we have to use the Hoyer. She agreed to do that, and upon transferring back, during the pivot to the wheelchair, her ankle gave out from under her.

Ms. Sobolewski sustained injuries, including a fractured ankle. She passed away from unrelated causes in 2020, before she could be deposed and provide her own account of the incident. However, Repovz testified that after the fall, Ms. Sobolewski told her the technologists never asked if she would like to use the Hoyer lift, but she also did not request to do so.

-2-

Plaintiff filed his complaint, along with two affidavits of merit, asserting both medical malpractice and ordinary negligence claims against defendants.[1] In Count I alleging medical malpractice, plaintiff asserted that the individual defendants, as agents or employees of the University of Michigan, breached the applicable standard of care owed to Ms. Sobolewski by: (1) failing to use a chair lift or other lift system to assist her onto the CT table; (2) attempting to get her onto the CT table without a chair lift or without using a gurney that could be raised or lowered; (3) failing to obtain a physician examination and stabilize her fractures; (4) agreeing to perform CT scans on patients unable to stand if lift devices are not available or used; and (5) attempting to assist her onto the table without adequate strength or training to prevent a fall.

In Count II alleging ordinary negligence, plaintiff asserted that the individual defendants, as agents or employees of the University of Michigan, breached their duty to use reasonable care with Ms. Sobolewski in several ways nearly identical to those listed under the medical malpractice count. Plaintiff further asserted:

> The manner and mechanism of this injury was that Defendants . . . knew or should have known . . . that Plaintiff's decedent,[] Dorothy Sobolewski, was a non-ambulatory patient and could not stand up on a stool and pivot. They had been advised and it was obvious, that she was morbidly obese and was bed and wheelchair bound. Defendants . . . not only attempted to have her stand, they were trying to get her up on a step stool to then pivot around and lie on the CT table. . . .

> Defendants . . . were informed that Plaintiff's decedent, Dorothy Sobolewski, was non-ambulatory and needed a chair lift and it was obvious to any reasonable person. They chose to try to stand her up on a step stool to get her on the CT table.

Melissa Mesko, plaintiff's expert radiology technologist, was deposed. Mesko testified, in part, that when preparing to perform a scan on a patient, she would look at that patient's history, including allergies, labs, and any notes from the doctor, as well as have a conversation with a patient in a wheelchair about why he or she is in the wheelchair and assess his or her ability to transfer. Additionally, when asked for her opinion on how defendants may have violated the standard of practice, she stated:

> After assessing the patient, her obesity and height and the fact that she was in a wheelchair and was with her daughter and her daughter requested a Hoyer lift for the appointment, I believe the standard of care was to use a Hoyer lift, and failure to do so was the breach of the standard of care after assessing her condition . . . .

Defendants moved to strike Mesko's testimony under MRE 702, arguing that she was unfamiliar with the proper standard of care applicable to the radiology technologist defendants in this case. In response, plaintiff stated, in part:

---

[1] Plaintiff originally filed a complaint in the Court of Claims, which was later consolidated with this case in Washtenaw Circuit Court.

> The Court could take judicial notice that helping a wheelchair bound patient onto a CT table does not involve complex issues relating to specific regions or localities. The situation, in fact, is more akin to *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 433[; 684 NW2d 864] (2004) (changing bed sheets) where our Supreme Court ruled that the issue presented did not require expert testimony.

The court ultimately denied defendant's motion to strike.

Defendants subsequently moved for summary disposition of plaintiff's ordinary negligence claims under both MCR 2.116(C)(8) and (10), arguing that the action sounded in medical malpractice alone. In doing so, defendants argued that under *Bryant* medical malpractice was plaintiff's only viable claim because the action occurred within the course of a professional relationship, and plaintiff's allegations raise questions of medical judgment beyond the realm of common knowledge and experience, citing the nearly identical allegations in both the medical malpractice and negligence counts, as well as Mesko's testimony. Specifically, defendants asserted:

> The proper assessment of a patient, the patient's medical history, the patient's physical presentation on the date of service, and the balancing of those pieces of information along with the patient's desire not to utilize a Hoyer lift to transfer onto an imaging table, all raise questions of medical judgment requiring expert testimony.

Plaintiff responded, likening this case to *Bryant* in which the Court held that the plaintiff's specific claim that the defendant failed to take steps to protect the decedent after she had been discovered entangled between the bed rails and mattress of her hospital bed sounded in ordinary negligence, *Bryant*, 471 Mich at 430-432. He asserted that Ms. Sobolewski's obvious physical characteristics and use of a wheelchair would have led any ordinary person to conclude that she was incapable of using a stepstool to get onto the CT table.

Defendants reiterated their arguments in their reply brief and at the motion hearing, as did plaintiff, and the court ultimately granted the motion and dismissed plaintiff's ordinary negligence claims, finding that the incident occurred within the scope of a professional relationship and an ordinary person would not have known appropriate protocol or medical judgment under the circumstances. The parties subsequently stipulated to dismissal of plaintiff's medical malpractice claims, but the order stated, "This stipulation and order shall not impair Plaintiff's right to appeal the prior ruling by the Court that the case sounds only in medical malpractice as opposed to ordinary negligence." This appeal followed.

## II. STANDARDS OF REVIEW

Defendants brought their motion for summary disposition under both MCR 2.116(C)(8) and (10), but the trial court did not specify which rule formed the basis for its decision to grant summary disposition. However, we construe the motion as having been granted under MCR 2.116(C)(10), because the parties attached deposition and other evidence to their briefs, and it seems apparent the court considered this evidence. See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012) ("[B]ecause the trial court considered

documentary evidence beyond the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10).").

To the extent the issues raised on appeal have been preserved:

> Appellate courts review de novo a trial court's decision on a motion for summary disposition. *Bernardoni v Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2006). "A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "In deciding a motion under subrule (C)(10), the trial court views affidavits and other documentary evidence in the light most favorable to the nonmoving party." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 397; 572 NW2d 210 (1998). [*Lockport Twp v City of Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017).]

Further, "[w]hether a plaintiff's claim sounds in ordinary negligence or in medical malpractice is a question of law that this Court reviews de novo." *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 329; 964 NW2d 839 (2020).

## III. ANALYSIS

Plaintiff argues generally that the trial court erred when it found that his claims sounded in medical malpractice and granted defendants summary disposition of his ordinary negligence claims, but makes some additional arguments on appeal within this broader issue, which we will address throughout.

### A. DEAD MAN'S STATUTE

Plaintiff asserts, within his challenge to the trial court's summary disposition decision, that defendants indirectly relied on deposition testimony from Hadjem and Silvester regarding Ms. Sobolewski's refusal of the Hoyer lift, and that testimony was inadmissible under the Dead Man's Statute, MCL 600.2166 . However, he does not direct the Court to where he challenged use of the testimony on the same basis below, nor did we find such a challenge in our review of the lower court record. Accordingly, plaintiff has failed to preserve and waived this issue for appellate review. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 3 ("[O]ur Supreme Court has not extended the plain error rule to civil cases and application of the plain error rule contravenes Supreme Court precedent.").

Even if we were to consider this issue, plaintiff's argument fails. As plaintiff readily concedes, this Court has held that MRE 601[2] supersedes MCL 600.2166. *Estate of Backofen v*

---

[2] MRE 601 was amended, effective January 1, 2024, but the amendment does not alter our analysis.

*Backofen*, 157 Mich App 795, 801; 404 NW2d 675 (1987). Plaintiff asserts, nonetheless, that MCL 600.2166 is still good law under *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999), an argument which has been rejected by this Court, *In re Moon Estate*, unpublished per curiam opinion of the Court of Appeals, issued January 27, 2011 (Docket No. 294176), p 3-5. Although unpublished and therefore not binding, we find that decision persuasive,[3] and plaintiff has failed to make a meaningful argument otherwise, simply quoting portions of *McDougall* with no analysis as to how the quoted portions support his argument.

### B. ORDINARY NEGLIGENCE VS MEDICAL MALPRACTICE

The main issue on appeal is whether the trial court erred in finding plaintiff's claims sounded only in medical malpractice.

Both parties cite *Bryant* in support of their positions. Under *Bryant*, 471 Mich at 422:

[A] court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both questions are answered in the affirmative, the action is subject to procedural and substantive requirements that govern medical malpractice actions.

### i. PROFESSIONAL RELATIONSHIP

A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff. [*Bryant*, 471 Mich at 422-423.]

Plaintiff did not challenge the first *Bryant* prong, either in his response to defendants' summary-disposition motion or at the motion hearing, essentially conceding that the actions at issue occurred within the course of a professional relationship. Yet now on appeal, plaintiff appears to do so, asserting radiology technologists cannot commit medical malpractice as "RTs, not being licensed as health care providers of any kind, cannot possibly exercise 'medical judgment', because they inherently do not have any (nor can they lawfully exercise it if they do)."

Not only is plaintiff's argument unpreserved and, therefore, waived, *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 3, but it is in direct contradiction to his admission

---

[3] "Although unpublished opinions of this Court are not binding precedent, MCR 7.215(C)(1), they may, however, be considered instructive or persuasive." *Adam v Bell*, 311 Mich App 528, 533 n 1; 879 NW2d 879 (2015) (quotation marks and citation omitted).

that "there is no question that Ms. Sobolewski had a professional relationship with Michigan Medicine ('UM'), which automatically extends to UM employees", as well as the law. As plaintiff does not dispute that Michigan Medicine is a licensed healthcare facility, the individual defendants were employees of Michigan Medicine,[4] and Michigan Medicine and its employees had a professional relationship with Ms. Sobolewski, we fail to comprehend plaintiff's argument, and find no reason to conclude that radiology technologists like Hadjem, Silvester, and Gusway cannot inherently be liable for medical malpractice under *Bryant*, 471 Mich at 422-423.

Despite this concession, plaintiff cites *LaFave v Alliance Healthcare Servs, Inc*, 331 Mich App 726; 954 NW2d 566 (2020), and asserts that radiology technologists are not licensed health care professionals nor specialty certified, but to satisfy the first element of a medical malpractice claim, they need not be. *Bryant*, 471 Mich at 422-423. *LaFave* is easily distinguished. There, this Court held that an MRI technician was incapable of committing medical malpractice because the MRI provider she worked for did not qualify as a licensed health facility, and she herself was not a licensed or registered health care professional, or otherwise capable of medical malpractice as a principal. *LaFave*, 331 Mich App at 731-736. Here, again, plaintiff explicitly concedes that Michigan Medicine is a licensed health care facility and the individual defendants were its employees.

## ii. MEDICAL JUDGMENT

Because there is no genuine issue of material fact that a professional relationship existed between defendants and Ms. Sobolewski, we must consider "whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 471 Mich at 422. In other words, we must determine

> whether the claim raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience. If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved. [*Id*. at 423.]

This depends on " 'whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment.' " [*Id*. at 423-424, quoting *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 46; 594 NW2d 455 (1999).]

In his response to defendants' motion for summary disposition, plaintiff focused his arguments on defendants' decision regarding the stepstool, and essentially conceded that his claims

---

[4] In his brief on appeal, plaintiff states, "There is no question here but that the three RTs were employees of UM (a duly licensed health care facility) on the date of Ms. Sobolewski's injury."

regarding the additional allegations including use of the lift sounded in medical malpractice, stating:

> [Ms. Sobolewski's] obvious physical characteristics—morbid obesity, short stature, and presentation in a wheelchair—by themselves were signals to any reasonable person assisting her that she was not capable of stepping onto a step stool to get onto a CT table. Nonetheless, Ms. Sobolewski was allowed to stand, pivot, attempt to step on a step stool, and transfer back, and broke her ankle during the process. When she asked to stand up initially, or at any point thereafter, it would have been obvious to anyone that she had limited maneuverability.
>
> * * *
>
> It is ordinary negligence to attempt to have Ms. Sobolewski try to get onto a step stool in her condition when one person, a large adult male, could not help her to begin with. The decision-making regarding a Hoyer lift is not a question for ordinary negligence. Similarly, whether the technologists should have first checked Ms. Sobolewski's medical records or questioned her further about her medical history are arguably subjects that could need expert testimony.

And at the hearing, plaintiff's counsel made this same point:

> [T]he issue with a Hoyer is unrelated to this. The issue of any medical decision making is unrelated to this. And Bryant says specifically, a patient who presents with a readily identifiable risk of a specific injury, that patient who then suffers an injury from that specific identifiable risk, that's ordinary negligence or it could be if the jury so decides.

Now on appeal, plaintiff reiterates his argument regarding use of the stepstool, but also expands his argument, asserting that all his claims sound in ordinary negligence because no expert testimony was "necessary to determine whether UM's employees should have used a Hoyer lift to maneuver *this particular patient*—too obese and weak to mount the CT table even with assistance from 3 RTs—onto the examination platform, after alternative methods proved both ineffective and dangerous," and "[w]hen she was asked to stand up initially, and at every point thereafter, her limited maneuverability was apparent[.]"

Although we could find this argument to be waived, *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 3, viewing the evidence presented in the light most favorable to plaintiff, we hold that the trial court did not err in granting summary disposition of all of plaintiff's ordinary negligence claims, finding that the claims sound solely in medical malpractice.

While it is true that Ms. Sobolewski's weight and wheelchair use were observable facts, and it may seem obvious that such an individual might struggle to get onto a CT scan table, a closer look at plaintiff's allegations and the record evidence convince us that all of plaintiff's claims sound in medical malpractice because each raises questions involving medical judgment. "[I]njuries incurred while a patient is being transferred from a wheelchair to an examining table . . . may or may not implicate professional judgment. The court must examine the particular factual setting of the plaintiff's claim in order to determine whether the circumstances—for example, the

medical condition of the plaintiff or the sophistication required to safely effect the move—implicate medical judgment as explained in *Dorris*." *Bryant*, 471 Mich at 421 n 9.

Here, plaintiff's ordinary negligence claims (failure to use a chair or other lift system, or a gurney; failure to obtain a physician examination; acceptance of patients unable to stand if lift devices are not used; failure to refrain from attempting to assist Ms. Sobolewski onto the table without adequate training or strength to prevent a fall; use of a stepstool) raise questions involving medical or professional judgment. While an ordinary person may have recognized Ms. Sobolewski's risk of falling or inherent difficulty getting onto the table, it is clear from the allegations themselves and the evidence presented that at least some level of professional knowledge or experience was necessary to adequately assess the extent of that risk, Ms. Sobolewski's capabilities, and the available and appropriate methods for getting her safely onto the CT scan table.

Hadjem and Silvester testified that it is their practice to look at medical information regarding why a patient is there, to observe the patient, and to speak to the patient about their capabilities, which they say they did with Ms. Sobolewski. In so doing, Ms. Sobolewski indicated she could stand and pivot, which Repovz admitted she did to get from the car to the wheelchair before entering the hospital. They also testified to offering the Hoyer lift, and considering other methods of transfer at their disposal, including additional technologists for assistance, as well as a stepstool. Although a layperson may certainly know of these options to assist anyone with mobility issues, specialized knowledge may be required to determine for whom and under what circumstances these options are most appropriate, especially for someone in Ms. Sobolewski's condition. See *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484, 498; 708 NW2d 453 (2005) ("It is clear from the deposition testimony that a nursing background and nursing experience are at least somewhat necessary to render a risk assessment and to make a determination regarding which safety or monitoring precautions to utilize when faced with a patient who is at risk of falling."); *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 523; 918 NW2d 645 (2018) ("[W]e hold that the claim that the aide failed to properly assist plaintiff while she was in the ICU implicates medical judgment because it requires consideration of plaintiff's individualized medical needs.").

Mesko's testimony reinforces this conclusion. Again, Mesko testified, in part, that when preparing to perform a scan on a patient, she would look at that patient's history, including allergies, labs, and any notes from the doctor, as well as have a conversation with a patient in a wheelchair about why he or she is in the wheelchair and assess his or her ability to transfer. Additionally, when asked for her opinion on how defendants may have violated the standard of practice, she indicated that after assessing Ms. Sobolewski, along with Newton's request for a Hoyer lift prior to the appointment, the standard of care was breached by failing to use the Hoyer lift.

Plaintiff argues that the circumstances here are akin to those held to sound in ordinary negligence in *Bryant* and *Trowell*.[5] In both, the Supreme Court held that some claims raised in the respective complaints sounded in ordinary negligence, while others sounded in medical malpractice. In *Bryant*, a patient with no control of her locomotion and therefore housed in a bed with railings and a restraining belt was discovered by nursing assistants to be tangled within her gown and bedsheets and at risk of asphyxiation. They untangled her and informed supervising nurses of the risk and the need for a mechanism to prevent it from happening again, but they failed to remedy the issue, and the next day she slipped between the rails of her bed and died by asphyxiation. *Bryant*, 471 Mich at 416-417. The Court held that the plaintiff's risk assessment and failure to inspect claims sounded in medical malpractice, but that the claim of failure to protect after being discovered entangled the day prior sounded in ordinary negligence, stating:

> No expert testimony is necessary to determine whether defendant's employees should have taken *some* sort of corrective action to prevent future harm after learning of the hazard. The fact-finder can rely on common knowledge and experience in determining whether defendant ought to have made an attempt to reduce a known risk of imminent harm to one of its charges. [*Bryant*, 471 Mich at 430-431.]

In *Trowell*, an aide attempted to assist a patient to the bathroom, and dropped her. She then attempted to assist her again, and dropped her a second time. *Trowell*, 502 Mich at 514. The Court found the plaintiff's claim of failure to properly assist analogous to the failure to inspect claim in *Bryant*, and held that it sounded in medical malpractice. *Id*. at 522-523. However, with regard to the plaintiff's claim specific to the second drop, the Court stated:

> As in *Bryant*, the nurse's aide in this case discovered a danger when she attempted to move plaintiff and dropped her. After discovering this danger, the aide failed to take corrective action, such as calling for assistance or retrieving additional equipment to aid in moving plaintiff. Instead, the aide attempted the same action that had already failed and caused plaintiff injury—she tried again to move plaintiff unassisted. Like the situation described in *Bryant*, the aide in this case "recognize[d] that the resident's medical condition is such that [she] is likely to [fall] again," but the aide nevertheless failed to take corrective action. Plaintiff's complaint with regard to the second drop, viewed "in a light most favorable to the nonmovant," sets forth a claim that a jury "relying only on common knowledge and experience" could decide. [*Id*. at 522 (citations omitted; alterations in original).]

Plaintiff asserts that "[h]ere, as in both *Bryant* and *Trowell*, the first RT recognized that Ms. Sobolewski could not be safely transferred from her wheelchair to the CT table without assistance, and two additional RTs were summoned. But even with 3 RTs present, as S[i]lvester testified, it became apparent the collective muscle of the staff was inadequate to achieve the requisite transfer without the patient's assistance, which the patient had shown she was incapable

---

[5] Plaintiff also cites a number of unpublished opinions he asserts support his argument, but there are unpublished opinions which also support defendants' arguments, each highly dependent on the individual circumstances of the case.

of providing . . . ." However, here, there was no discovery of a risk and failure to act to correct it, nor was there one fall, the lack any corrective action, and a second fall. Rather, contrary to the defendant in *Trowell*, defendants here called for additional assistance and equipment to assist in getting plaintiff onto the table, including extra radiology technologists, the Hoyer lift, and the stepstool. Although use of the stepstool may have ultimately been determined to be inadvisable, the claim regarding its use does not sound in ordinary negligence.[6] It was instead one of many approaches, involving the use of professional judgment, to assist Ms. Sobolewski onto the CT scan table.[7]

Accordingly, the trial court did not err in granting defendants summary disposition of plaintiff's ordinary negligence claims, finding that all claims asserted sounded in medical malpractice.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

[6] Plaintiff states that under MRE 702, an expert can only testify if their expertise will assist the trier of fact, and "there is nothing to suggest that doctors, nurses, or any other health care providers have expertise in the use of stepstools." But again, utilization of the stepstool was one of several attempts made, using professional judgment, to assist Ms. Sobolewski onto the CT scan table.

[7] Because we hold that plaintiff's claims sound in medical malpractice as opposed to ordinary negligence, we need not consider his argument that Michigan Medicine is liable for the ordinary negligence of its employees.